67 P.3d 78

**Larry GILMAN, Plaintiff–Appellant–Cross Respondent,**

v.

**Frank DAVIS, Maria Davis, Stephen Glynn, Mickie Glynn, Aaron Glynn, and Allied Bail Bonds, Inc., Defendants–Respondents–Cross Appellants.**

No. 28068.

Supreme Court of Idaho, Boise, March 2003 Term.

April 2, 2003.

**600**

Malcolm S. Dymkoski, Coeur d'Alene, for appellant.

Fender and Fender, Coeur d'Alene, for respondent. J. Steven Fender argued.

EISMANN, Justice.

This is an appeal and cross-appeal from a judgment awarding a shareholder in a closely-held corporation the sum of $9,350 as the value of his corporate stock. The award was based upon his rights as a shareholder who dissented to the sale of all of the corporation's assets other than in the usual and regular course of business. Because the plaintiff was not a shareholder at the time of the shareholders' meeting at which the sale was approved, we reverse the judgment.

## I. FACTS AND PROCEDURAL HISTORY

In the late 1980's and early 1990's, plaintiff-appellant Larry Gilman and defendant-respondent Stephen Glynn owned a bail bond business. After they parted company, Gilman acquired an interest in American Bail Bonds, and Glynn became a shareholder in DAGL Enterprises, Inc. ("DAGL"). Both businesses were competitors in the bail bond business. The other shareholders of DAGL were defendant Michelle Montee and defendants-respondents Frank Davis and Aaron Glynn.

In 1992 Gilman commenced litigation against Glynn, and in 1998 he obtained a judgment. Glynn did not pay the judgment and subsequently filed a petition in bankruptcy. At that time he owned 500 shares of stock in DAGL. Glynn wrote the bankruptcy

trustee seeking to redeem the DAGL stock for the sum of $1,000. Believing that it was worthless, the trustee had not obtained the stock certificate from Glynn. After Glynn's inquiry, the trustee obtained the stock and auctioned it on December 2 or 3, 1998. Gilman, through a representative, submitted the high bid of $1,500. The trustee held the stock certificate, however, until the check given in payment cleared the bank.

On December 15, 1998, DAGL held a special shareholders' meeting attended by Frank Davis, Aaron Glynn, and Stephen Glynn. They, along with Michelle Montee, executed a waiver of notice regarding the meeting. The shareholders voted to sell all of the assets of DAGL to a recently-formed corporation named Allied Bail Bonds, Inc., ("Allied") in exchange for it assuming all of the liabilities of DAGL for outstanding bail bonds and for continuing to fund a lawsuit in which DAGL was attempting to obtain title to a parcel of real property. On December 28, 1998, DAGL and Allied executed an agreement of sale under which DAGL transferred all of its assets to Allied and Allied assumed all of DAGL's "responsibilities, obligations and liabilities, whether known or unknown." [1]

On December 17, 1998, the check given by Gilman's representative to purchase the 500 shares of DAGL from the bankruptcy trustee cleared the bank. The trustee then sent the stock certificate to Gilman, and he became a shareholder of record of DAGL on January 20, 1999, which was after the corporation's assets had been transferred to Allied.

On November 15, 1999, Gilman commenced this action against Frank Davis and his wife Regina; Steven Glynn and his wife Micki; Aaron Glynn; Michelle Montee; DAGL; Allied; Alliance Title & Escrow Corporation; Lynn Whiting; Car d'Lane & Co., LLC; CLS Mortgage, Inc.; North Idaho Title Insurance, Inc.; and a parcel of real property.[2]

---

1. Gilman did not base any of his claims against Allied upon its assumption of the liabilities of DAGL.

2. The defendants Lynn Whiting, Car d'Lane & Co., CLS Mortgage, Inc., and North Idaho Title Insurance, Inc., were named as defendants because of transactions occurring after Allied acquired DAGL's assets. One of the assets ac-

quired was DAGL's interest in a pending lawsuit it had filed against Lynn Whiting and Car d'Lane & Co., LLC. In that lawsuit, DAGL alleged that it had conveyed certain real property to Whiting and Car d'Lane under an agreement in which those defendants would subdivide the property, build a shell building on a portion of it, and then deed that portion of the property along with the shell building back to DAGL. That lawsuit was

In his first cause of action, Gilman sought to compel DAGL to have a shareholders' meeting. In his second cause of action, Gilman sought to compel the officers of DAGL to file an annual report with the Idaho Secretary of State. In his third cause of action, Gilman sought to undo the settlement of the lawsuit that DAGL had filed against Lynn Whiting and Car d'Lane & Co., LLC. As part of the settlement of that litigation, a parcel of real property was conveyed to Allied. In his fourth cause of action, Gilman sought to enforce rights as a dissenting shareholder. In his fifth cause of action, Gilman sought damages on behalf of DAGL regarding the parcel of real property that had been conveyed to Allied upon the settlement of the litigation against Lynn Whiting and Car d'Lane & Co., LLC. In his sixth cause of action, Gilman sought to enjoin Allied from spending money obtained from a loan secured by a lien on the parcel of property. In his seventh cause of action, Gilman sought to have Steven Glynn, Frank Davis, and Allied transfer to DAGL a restrictive covenant obtained as part of the settlement of the litigation or, in the alternative, to pay damages to DAGL.

The defendants ultimately filed motions for summary judgment or partial summary judgment, which were heard on October 25, 2000. On November 7, 2000, the district court entered an order dismissing this action as to defendants Lynn Whiting and Car d'Lane & Company, LLC. On December 12, 2000, the district judge entered an order dismissing the first, second, third, fifth, sixth, and seventh causes of action. As to the fourth cause of action, the district court granted Gilman leave to amend his pleadings to allege a cause of action as a dissenting shareholder. On January 4, 2001, the district court entered an order dismissing all of Gilman's claims against CLS Mortgage, Inc., pursuant to a stipulation of the parties.

On January 29, 2001, Gilman filed an amended complaint in which he sought judgment against Steve and Micki Glynn, Aaron Glynn, Frank and Regina Davis, and Allied. The case was then tried to the district court on May 9 and 10, 2001. The issues tried were whether Gilman was entitled to assert rights as a dissenting shareholder and, if so, what was the value of his 500 shares of DAGL stock. On June 26, 2001, the district court entered its memorandum decision. It concluded that the bankruptcy trustee was entitled to notice of the shareholders meeting held on December 15, 1998; that Steve Glynn's waiver of notice regarding his shares was of no effect because he was not the owner of those shares; and that Gilman was therefore entitled to recover the value of his 500 shares of stock from the defendants. The district court determined that those shares had a fair market value of $9,350.

Gilman timely filed a memorandum of costs, and the defendants timely objected. The matter was argued on September 21, 2001, and on September 24, 2001, the district court entered its opinion awarding Gilman costs and attorney fees under Idaho Code § 30–1–1331 in the sum of $8,000 and court costs in the sum of $2,785.95 under Rule 54(d) of the Idaho Rules of Civil Procedure. In its judgment, the district court ordered that Allied was primarily liable for the judgment and that Gilman could execute upon the property of the individual defendants only if Allied did not pay the judgment. Gilman timely appealed, and the defendants timely cross-appealed.

### III. ANALYSIS

■■■ A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Bramwell v. South Rigby Canal Co.,* 136 Idaho 648, 39 P.3d 588 (2001);

settled on June 28, 1999. As part of the settlement, Whiting and Car d'Lane conveyed a portion of the real property back to DAGL. They also executed a promissory note in favor of Allied, as the successor to DAGL's assets. That promissory note was secured by a deed of trust upon property owned by Whiting and Car d'Lane, and North Idaho Title Insurance, Inc., was the trustee under that deed of trust. After the settlement, Allied borrowed money from CLS Mortgage,

which was secured by a deed of trust on the parcel of real property DAGL had obtained in settlement of the litigation. Gilman sought an order requiring Allied, Lynn Whiting, Car d'Lane & Co., CLS Mortgage, Inc., and North Idaho Title Insurance, Inc., to convey their interests in the real property to DAGL and damages against Allied, CLS Mortgage, and the individual defendants because they encumbered that real property.

IDAHO R. CIV. P. 52(a). When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 39 P.3d 588 (2001). It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Rowley v. Fuhrman*, 133 Idaho 105, 982 P.2d 940 (1999). On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence. *Id.* Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 39 P.3d 588 (2001).

Gilman has not appealed the summary judgment dismissing the first, second, third, fifth, sixth, and seventh causes of action in his complaint. The issues raised by the appeal and cross-appeal concern evidentiary rulings by the district court during the court trial, the district court's conclusion that Gilman could assert rights as a dissenting DAGL shareholder, the valuation of the shares he purchased, and the awarding of costs and attorney fees. The central issue is whether Gilman could assert rights as a dissenting DAGL shareholder and, if so, recover judgment against Allied and the individual defendants for the value of his DAGL stock.

Dissenters' rights are governed by Idaho Code §§ 30–1–1301 through 30–1–1331. Pursuant to Idaho Code § 30–1–1302(1):

> A shareholder is entitled to dissent from, and obtain payment of the fair value of his shares in the event of, ... [c]onsummation of a sale or exchange of all, or substantially all, of the property of the corporation other than in the usual and regular course of business, if the shareholder is entitled to vote on the sale or exchange.

To be entitled to dissent, Gilman must have been "entitled to vote on the sale or exchange." IDAHO CODE § 30–1–1302(1)(c) (1999). To be entitled to vote on the sale or exchange, Gilman had to be a shareholder of DAGL on December 15, 1998, the date the waiver of notice was signed by the shareholders. IDAHO CODE § 30–1–704(2) (1999). A

"shareholder" means "the record shareholder or the beneficial shareholder." IDAHO CODE § 30–1–1301(7) (1999). A "record shareholder" means "the person in whose name shares are registered in the records of the corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." IDAHO CODE § 30–1–1301(5) (1999). The bankruptcy trustee was never a record shareholder of DAGL, and Gilman was not a record shareholder until January 20, 1999. A "beneficial shareholder" means "the person who is a beneficial owner of shares held in a voting trust or by a nominee as the record shareholder." IDAHO CODE § 30–1–1301(6) (1999). Neither the bankruptcy trustee nor Gilman was a beneficial shareholder.

■ Because Gilman was not a shareholder of DAGL on December 15, 1998, he was not entitled to vote on the sale or exchange of DAGL's assets at the shareholders' meeting held on that date. Because he was not entitled to vote, he did not have rights as a dissenting shareholder. Therefore, he was not entitled to assert dissenters' rights.

Gilman counters that the district court erred in finding that the shareholders' meeting was held on December 15, 1998. The actual date of that meeting was contested during the trial. The district court found that the shareholders' meeting occurred on December 15, 1998. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Camp v. East Fork Ditch Co. Ltd.*, 137 Idaho 850, 55 P.3d 304 (2002). The district court's finding regarding the actual date of the meeting was supported by substantial and competent evidence. Because Gilman was not a shareholder in DAGL at the time of the shareholder meeting, he is not entitled to assert dissenters' rights. Therefore, the judgment of the district court, including the order awarding costs and attorney fees, must be reversed and Gilman's amended complaint dismissed.

■ Gilman and Davis both seek an award of attorney fees on appeal. Because Gilman is not the prevailing party, he is not entitled to an award of attorney fees. Davis seeks an award of attorney fees under Idaho Appellate

Rules 40 and 41. He has not cited any statutory or contractual provision authorizing such award. Idaho Appellate Rule 40 provides for the awarding of costs on appeal, and Rule 41 specifies the procedure for requesting an award of attorney fees on appeal. Neither rule provides the authority for awarding attorney fees. *Camp v. East Fork Ditch Co. Ltd.*, 137 Idaho 850, 55 P.3d 304 (2002). Therefore, we will not address that issue. *Id.*

### IV. CONCLUSION

The judgment of the district court is reversed. Costs on appeal, but not attorney fees, are awarded to the respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.