196 P.3d 325

Kyle ATHAY, Plaintiff–Appellant,

v.

Dale M. STACEY, individually and in his official capacity as Sheriff of Rich County, Utah; Rich County, Utah, a political subdivision of the State of Utah; Gregg Athay, individually and in his official capacity as Captain of the Sheriff's Department of Bear Lake County, Idaho; and Bear Lake County, Idaho, a political subdivision of the State of Idaho, Defendants–Respondents.

No. 33785.

Supreme Court of Idaho,
Pocatello, April 2008 Term.

Oct. 15, 2008.

Rehearing Denied Oct. 15, 2008.

410

Craig R. Jorgensen, Pocatello, for appellant.

Naylor & Hales, P.C., Boise, for respondents Gregg Athay and Bear Lake County. Kirtlan Naylor argued.

Stirba & Associates, Salt Lake City, Utah, and E.W. Pike & Associates, Idaho Falls, for respondents Dale Stacey and Rich County. Peter Stirba argued.

**SUBSTITUTE OPINION.**

**THE COURT'S PRIOR OPINION DATED JUNE 18, 2008 IS HEREBY WITHDRAWN.**

EISMANN, Chief Justice.

This is an appeal from the grant of summary judgment dismissing this action brought to recover damages for the Plaintiff's injuries sustained when his vehicle was struck by a motorist fleeing at high speed to avoid arrest. The Sheriff from Rich County, Utah, had pursued the fleeing Mustang from Utah, through Wyoming, and into Bear Lake County, Idaho. After attempting unsuccessfully to stop the Mustang by using spike strips, deputies from Bear Lake County joined in the pursuit. The district court held that the complaint must be dismissed as to all defendants for various reasons including that the plaintiff failed to comply with the notice of tort claim requirements of the Idaho Tort Claims Act, the plaintiff failed to post a bond as required by Idaho Code § 6–610, and the conduct of the defendants did not rise to the level of reckless disregard. We affirm the dismissal as to all defendants except Rich County.

## I. FACTS AND PROCEDURAL HISTORY

On June 10, 1999, Kyle Athay (Plaintiff) was injured when his automobile was slammed into by a Mustang being driven by Darrell Ervin, who was fleeing pursuing law enforcement officers. Rich County Sheriff Dale Stacey commenced pursuing the Mustang in northern Utah and followed it for about sixty miles through Wyoming and into Idaho. Once the pursuit entered Bear Lake County, Idaho, it was joined by Bear Lake County Deputies Gregg Athay and Chad Ludwig who followed behind Sheriff Stacey. Plaintiff had pulled off the highway and stopped to help at the scene of a deer-vehicle collision on the highway about three miles north of Montpelier. As he was pulling back onto the highway, the Mustang crashed into his car.

On April 19, 2002, the Plaintiff[1] filed this lawsuit against Sheriff Dale Stacey and Rich

---

1. The lawsuit was originally filed by Kyle Athay and his wife, Melissa Athay. She is no longer a    party to the lawsuit.

County, Utah, against Deputies Gregg Athay [2] and Chad Ludwig, and against Bear Lake County and its Sheriff, Brent Bunn. The district court granted the Defendants' motions for summary judgment, and the Plaintiff appealed. This Court affirmed the dismissal as to Sheriff Brent Bunn and Deputy Chad Ludwig, vacated the summary judgments as to the remaining Defendants, and remanded the case for further proceedings. *Athay v. Stacey*, 142 Idaho 360, 128 P.3d 897 (2005) (*Athay I* ).

On July 10, 2006, Deputy Athay and Bear Lake County moved for summary judgment on the grounds that prior to filing this lawsuit the Plaintiff had not posted the bond required by Idaho Code § 6–610 and had not given adequate notice of tort claim as required by Idaho Code §§ 6–906 and 6–907. Sheriff Stacey and Rich County joined in the motion. The district court held that the required bond had not been posted and that the notice of tort claim was not adequate to put Bear Lake County on notice that a claim was being pursued against Deputy Athay. The court therefore dismissed this lawsuit as to Deputy Athay and Sheriff Stacey. It reserved ruling on Rich County's claim that the notice of tort claim did not comply with Idaho Code § 6–907 because the Plaintiff had not had adequate time to respond to that argument.

On July 31, 2006, Rich County again moved for summary judgment, contending that the notice of tort claim was not timely under Idaho Code § 6–906 and that the conduct of Sheriff Stacey did not rise to the level of reckless disregard. Bear Lake County joined in the motion alleging that the notice of tort claim served upon it was not sufficient to put it on notice of a claim that it was liable for the conduct of Sheriff Stacey. The district court held that the Idaho Tort Claims Act, I.C. §§ 6–901 *et seq.*, applies to Sheriff

Stacey and that the notice of tort claim given to Rich County was untimely. The court also ruled that Sheriff Stacey's conduct did not rise to the level of reckless disregard. With respect to Bear Lake County, the district court ruled that the conduct of its employees did not rise to the level of reckless disregard. The court granted summary judgment dismissing Plaintiff's remaining claims against Rich County and Bear Lake County. The Plaintiff then timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in dismissing the complaint as to Deputy Athay because the Plaintiff had not posted the bond required by Idaho Code § 6–610?

2. Did the district court err in dismissing the complaint as to Sheriff Stacey because the Plaintiff had not posted the bond required by Idaho Code § 6–610?

3. Did the district court err in dismissing the complaint as to Bear Lake County?

4. Did the district court err in dismissing the complaint as to Rich County?

5. Did the district court err in holding that Ervin and Sheriff Stacey were not acting in concert?

6. Is either the Plaintiff, Sheriff Stacey, or Rich County entitled to an award of attorney fees on appeal?

## III. ANALYSIS

**A. Did the District Court Err in Dismissing the Complaint as to Deputy Athay because the Plaintiff Had Not Posted the Bond Required by Idaho Code § 6–610?**

Idaho Code § 6–610 [3] requires that a plaintiff filing a civil lawsuit against a law

---

**2.** Deputy Gregg Athay is Kyle Athay's half-brother.

**3.** The relevant portions of the statute provide as follows:

**6–610. ACTIONS AGAINST LAW ENFORCEMENT OFFICERS.**—(1) For purposes of this section, a "law enforcement officer" shall be defined as any court personnel, sheriff, constable, peace officer, state police

officer, correctional, probation or parole official, prosecuting attorney, city attorney, attorney general, or their employees or agents, or any other person charged with the duty of enforcement of the criminal, traffic or penal laws of this state or any other law enforcement personnel or peace officer as defined in chapter 51, title 19, Idaho Code.

(2) Before any civil action may be filed against any law enforcement officer or service

enforcement officer for a claim arising out of, or in the course of the performance of the officer's duty must file a bond at the same time that the plaintiff files the complaint. The purpose of the bond is to ensure diligent prosecution of the lawsuit and the payment of all costs and expenses, including a reasonable attorney's fee, that may be awarded against the plaintiff. If the plaintiff does not file the bond, and the defendant law enforcement officer objects, then the court must dismiss the lawsuit. It is undisputed that the Plaintiff in this case did not post the bond required by Section 6–610.

Relying upon *Kent v. Pence,* 116 Idaho 22, 773 P.2d 290 (Ct.App.1989), the Plaintiff argues that Idaho Code § 6–610 was impliedly repealed by the enactment of Idaho Code § 6–918A.[4] The latter statute requires a finding of bad faith to award attorney fees in actions brought under the Idaho Tort Claims Act and provides that the right to recover attorney fees in such actions is governed exclusively by the Act. In *Kent,* the Court of Appeals held that Idaho Code § 6–918A prevented an award of attorney fees under Idaho Code § 12–121 in an action brought under the Tort Claims Act. The reasoning of the *Kent* opinion has no bearing on the issue of

whether the Plaintiff was required to post the bond required by Idaho Code § 6–610.

As originally enacted in 1953, Idaho Code § 6–610 provided for the award of attorney fees to the prevailing party in actions against any "person charged with the duty of enforcement of the criminal laws of this state, or service of civil process, when such action arises out of, or in the course of the performance of his duty." In 1971, the Idaho legislature enacted the Idaho Tort Claims Act, granting the right to recover against governmental entities for the negligent or otherwise wrongful conduct of their employees while acting within the course and scope of their employment. Ch. 150, § 1, 1971 Idaho Sess. Laws 743. In 1978, the legislature amended the Act to add Idaho Code § 6–918A, which provides that the prevailing party in a civil action for money damages brought under the Act can recover attorney fees only if the party against whom attorney fees are sought acted in bad faith in the commencement, conduct, maintenance or defense of the action. Ch. 272, § 6, 1978 Idaho Sess. Laws 630, 633–34. Because Section 6–610 did not include the bad faith requirement for the award of attorney fees, there was a conflict

---

of civil process on any law enforcement officer, when such action arises out of, or in the course of the performance of his duty, or in any action upon the bond of any such law enforcement officer, the proposed plaintiff or petitioner, as a condition precedent thereto, shall prepare and file with, and at the time of filing the complaint or petition in any such action, a written undertaking with at least two (2) sufficient sureties in an amount to be fixed by the court. The purpose of this requirement is to ensure diligent prosecution of a civil action brought against a law enforcement officer, and in the event judgment is entered against the plaintiff or petitioner, for the payment to the defendant or respondent of all costs and expenses that may be awarded against the plaintiff or petitioner, including an award of reasonable attorney's fees as determined by the court.
    . . . .
    (4) At any time during the course of a civil action against a law enforcement officer, the defendant or respondent may except to either the plaintiff's or petitioner's failure to file a bond or to the sufficiency of the sureties or to the amount of the bond.
    (5) When the defendant or respondent excepts to the plaintiff's or petitioner's failure to post a bond under this section, the judge shall dismiss the case.
    . . . .

4. The statute provides:

    At the time and in the manner provided for fixing costs in civil actions, and at the discretion of the trial court, appropriate and reasonable attorney fees may be awarded to the claimant, the governmental entity or the employee of such governmental entity, as costs, in actions under this act, upon petition therefor and a showing, by clear and convincing evidence, that the party against whom or which such award is sought was guilty of bad faith in the commencement, conduct, maintenance or defense of the action. In no case shall such attorney fee award or any combination or total of such awards, together with other costs and money judgment or judgments for damages exceed, in the aggregate, the limitations on liability fixed by section 6–926, Idaho Code. The right to recover attorney fees in legal actions for money damages that come within the purview of this act shall be governed exclusively by the provisions of this act and not by any other statute or rule of court, except as may be hereafter expressly and specifically provided or authorized by duly enacted statute of the state of Idaho.

between the two statutes in cases that would be covered by both of them.

In 1997, however, the legislature eliminated that conflict. It amended Section 6–610 so that it no longer provides for the awarding of attorney fees in actions brought against law enforcement officers. Ch. 131, § 1, 1997 Idaho Sess. Laws 398, 398–99. After that amendment, Section 6–918A provides the exclusive authority for the awarding of attorney fees in civil actions for money damages that are brought under the Idaho Tort Claims Act. In actions brought under the Act against a law enforcement officer, Section 6–610 simply requires the posting of a bond to secure the payment of any costs and attorney fees that may be awarded to the officer in the action.

The Plaintiff also argues that Section 6–610 cannot be applied to him because he is indigent and could not have afforded to post the required bond. The Plaintiff does not point to any sworn statement in the record showing that he was indigent when he filed this case. Since the trial court has discretion in setting the amount of the bond and was not asked to do so, we can only speculate as to what amount the Plaintiff would have been required to pay.

Assuming that he could not pay whatever that amount would have been, Idaho Code § 31–3220(2) provides that "[t]he court may authorize the commencement or defense of any action without prepayment of fees, costs or security, by any indigent person not a prisoner." The person seeking to commence the lawsuit must file an affidavit showing that he or she is indigent and unable to pay fees, costs, or give security. If, after an informal hearing, the court so finds, then it can waive the prepayment of fees or costs or the giving of security, *id.*, including the bond required by Section 6–610. The Plaintiff did not seek relief from the bond requirement pursuant to Idaho Code § 31–3220. His fail-

ure to do so does not constitute a ground for avoiding the consequences of not complying with Idaho Code § 6–610. Therefore, the district court did not err in dismissing this action as to Deputy Athay.

The district court also held that the complaint must be dismissed as to Deputy Athay on the ground that the notice of tort claim did not mention him by name. The notice stated that the claim "arises as a result of the negligent conduct of the Bear Lake County Sheriff's Office" and that "the negligent acts and omissions of the Bear Lake County Sheriff's Office include ... negligently engaging in a high-speed vehicle chase...." Because we have upheld the dismissal against Deputy Athay for the Plaintiff's failure to comply with Idaho Code § 6–610, we need not address the issue of whether the notice of tort claim was sufficient with respect to a claim against him.

**B. Did the District Court Err in Dismissing the Complaint as to Sheriff Stacey Because the Plaintiff Had Not Posted the Bond Required by Idaho Code § 6–610?**

The Plaintiff does not contend that Idaho Code § 6–610 is inapplicable to Sheriff Stacey, and it clearly applies to him. The statute applies to any "law enforcement officer," which is defined as including three categories of people. The first category is "any court personnel, sheriff, constable, peace officer, state police officer, correctional, probation or parole official, prosecuting attorney, city attorney, attorney general, or their employees or agents, or any other person charged with the duty of enforcement of the criminal, traffic or penal laws of this state." *Id.* The second category is "any other law enforcement personnel." *Id.* The third category is a "peace officer as defined in chapter 51, title 19, Idaho Code." [5] *Id.* Sheriff Stacey would

---

**5.** Idaho Code § 19–5101(d) defines "peace officer" as follows:

"Peace officer" means any employee of a police or law enforcement agency which is a part of or administered by the state or any political subdivision thereof and whose duties include and primarily consist of the prevention and detection of crime and the enforcement of

penal, traffic or highway laws of this state or any political subdivision. "Peace officer" also means an employee of a police or law enforcement agency of a federally recognized Indian tribe who has satisfactorily completed the peace officer standards and training academy and has been deputized by a sheriff of a county

be included in the category of "any other law enforcement personnel." For the same reasons that the district court did not err in dismissing the complaint as to Deputy Athay, the court correctly dismissed the complaint as to Sheriff Stacey for the failure to comply with Idaho Code § 6–610.

## C. Did the District Court Err in Dismissing the Complaint as to Bear Lake County?

Even though Deputy Athay and Sheriff Stacey were properly dismissed as defendants in this action, that dismissal was not on the merits. Therefore, Bear Lake County could still be liable under the doctrine of *respondeat superior. Barlow v. International Harvester Co.*, 95 Idaho 881, 889, 522 P.2d 1102, 1110 (1974) ("The failure of the jury to return a verdict as to the servant while rendering one against the master based on *respondeat superior* does not relieve the master of liability"). The district court held that neither the conduct of Deputy Athay nor that of Sheriff Stacey rose to the level of reckless disregard.

**■ 1. Did the district court err in concluding Deputy Athay's conduct did not rise to the level of reckless disregard?** In *Athay I*, we held that under Idaho Code § 49–623, the driver of an authorized police vehicle engaged in a high-speed chase can be held liable only if the driver's conduct amounts to reckless disregard for the safety of others. The district court held that Deputy Athay's conduct did not rise to that level. After stating that Deputy Athay was not aware of the deer-vehicle collision before Ervin crashed into the Plaintiff's vehicle, the court concluded, "On these facts, Captain Athay had no *actual knowledge* of any conditions that would have told him to immediately cease or lessen the pursuit any differently than he did." (Emphasis in original.) The district court erred in its analysis.

**■** To constitute reckless disregard, the actor's conduct must not only create an unreasonable risk of bodily harm, *Smith v. Sharp*, 85 Idaho 17, 27, 375 P.2d 184, 190 (1962), but, as we held in *Athay I*, the actor

must actually perceive the high degree of probability that harm will result and continue in his course of conduct. 142 Idaho at 365, 128 P.3d at 902. Actual knowledge of the high degree of probability that harm will result does not require knowledge of the actual person or persons at risk, or the exact manner in which they would be harmed. It only requires knowledge of the high degree of probability of the kind of harm that the injured party suffered. *See Harris v. State*, 123 Idaho 295, 299, 847 P.2d 1156, 1160 (1992).

Plaintiff had pulled out onto the highway after stopping to assist at the scene of the deer-vehicle accident. It does not matter why he had pulled off the highway and stopped. He could have pulled onto the highway for a variety of reasons. What is significant is the foreseeability that there would be vehicles on the highway, such as Plaintiff's; that the Defendant's conduct created an unreasonable risk of bodily harm to the occupants of those vehicles; and that the Defendant perceived there was a high degree of probability that harm would result and continued his course of conduct.

For example, in *Smith v. Sharp*, we held that the following course of conduct by a driver constituted reckless disregard:

> that he deliberately turned off his lights and proceeded in the darkness on the wrong side of the roadway toward the lighted intersection; was driving at a speed which was excessive for town driving; he was warned by one of the passengers that danger lurked ahead; he hit the depressions causing the occupants to be thrown violently forward; he continued on down an unfamiliar street for a distance of 173 feet without applying his brakes, although he could have stopped safely within the 173 feet; that he drove down a 45 degree embankment at such speed as to cause the automobile to flip over onto its top into the river just as the brakes were applied, all of which when taken together shows a deliberate course of conduct in reckless disregard of the rights of others

or a chief of police of a city of the state of Idaho.

and constituted the proximate cause of Marilee Smith's death.

85 Idaho at 33, 375 P.2d at 194.

We did not require that the driver know that his passenger would be killed by his conduct. Likewise, we did not require that he know that his manner of driving could cause his car to flip onto its top into the river, or that he even know the river was there as he drove in darkness at excessive speed down an unfamiliar street with his headlights off. Likewise, in *State v. Papse,* 83 Idaho 358, 363, 362 P.2d 1083, 1086 (1961), we held that a driver acted in reckless disregard by intentionally running a stop sign where obstructions to his view prevented him from seeing whether any vehicles were approaching on the crossing, through highway. We did not require proof that he had knowledge of the approaching car, or of the mother and daughter in that car who were killed in the collision.

"Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *Andre v. Morrow,* 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984); *accord, Roe v. Harris,* 128 Idaho 569, 571, 917 P.2d 403, 405 (1996). This Court can decide on appeal whether a defendant's conduct is sufficiently egregious to create a jury issue of whether it rises to the level of reckless disregard of the safety of others. *Cafferty v. State, Dept. of Transp., Div. of Motor Vehicle Services,* 144 Idaho 324, 332, 160 P.3d 763, 771 (2007); *Harris v. State, Dept. of Health & Welfare,* 123 Idaho 295, 299, 847 P.2d 1156, 1160 (1992). Even though the district court applied the wrong standard for reckless disregard, we affirm the dismissal as to Deputy Athay because the evidence does not create a jury issue as to whether his conduct constituted reckless disregard in this case.

Sheriff Stacey pursued a Mustang automobile being driven by Ervin from Utah, through part of Wyoming, into Idaho. When the Mustang was headed into Idaho, Sheriff Stacey radioed Deputy Athay and asked him to attempt to stop the Mustang with spike strips. After obtaining the approval of the Bear Lake County Sheriff, Deputy Athay dispatched Deputy Ludwig to attempt to spike the tires of the Mustang. Deputy Athay did not know that the Mustang had Idaho plates, nor did he know that it was registered in Caribou County. He did know that the driver of the Mustang was suspected of being intoxicated.

Deputy Ludwig stopped at milepost 442 at 10:50 p.m. to prepare to spike the tires. At 10:56 p.m., he radioed that the Mustang had run over the spikes and was still going. Deputy Athay had stopped at milepost 440. When the Mustang passed him, he could smell burning rubber. Sheriff Stacey was approximately one mile behind the Mustang, and Deputy Athay joined in the pursuit after Sheriff Stacey went by. Deputy Athay remained behind Sheriff Stacey the entire time.

The Mustang initially slowed after running over the spike strips, but then sped back up to around 95 mph. Deputy Athay knew that a tire had been spiked because he could smell burning rubber when the Mustang passed his location. He believed that the Mustang would stop because of the flat tire before getting to Montpelier, which was about five miles away. The traffic on the highway that night was very light, the highway was dry and the weather was clear, and the area from where he was to Montpelier was sparsely populated with few intersecting roads.

At about milepost 439, Deputy Ludwig caught up with Deputy Athay. Deputy Ludwig had a faster vehicle, and he asked Deputy Athay if he could pass him and try to catch the Mustang. Deputy Athay had heard Sheriff Stacey state over the radio that the Mustang had slowed when entering Cokeville, Wyoming, and so he denied Deputy Ludwig's request and told him they would see if the Mustang slowed down when entering Montpelier.

The highway through Montpelier had four traffic lanes and a center turn lane. All of the cross streets intersecting the highway through Montpelier were guarded by stop signs. The highway through town was well lit, and Deputy Athay called ahead to the police and requested their assistance to control any traffic on side streets that intersected the highway.

After the Mustang passed through Montpelier, Deputy Athay saw it fishtail as it was leaving town near the location of the bowling alley at milepost 434. Deputy Athay thought it was speeding up, and so he told everyone to back off and told dispatch to notify Caribou County to request it have an officer in that jurisdiction again spike the vehicle. Deputy Athay slowed down. The Mustang continued on for about three miles, allegedly with its lights off, before colliding with the Plaintiff's vehicle.

From the point he joined in the pursuit until he told the officers to back off about six miles later, Deputy Athay did not engage in conduct that met the standard of reckless disregard. Although its reasoning was flawed, the district court arrived at the correct result in dismissing this action as to Deputy Athay.

■ **2. Is there evidence from which a jury could conclude that Bear Lake County could be liable for the conduct of Sheriff Stacey?** In *Athay I* we held that there was a genuine issue of material fact as to whether Sheriff Stacey's conduct constituted reckless disregard. We also held that there was a genuine issue as to the liability of Deputy Athay and Bear Lake County based upon the district court's statement in its order granting summary judgment that the parties had admitted that Sheriff Stacey was an agent or servant of Deputy Athay. On remand, Bear Lake County pointed out that it was not a party to that admission and that there was no factual basis for holding that Sheriff Stacey was an agent of Bear Lake County during the pursuit. The district court agreed that Bear Lake County was not bound by the stipulation, and the Plaintiff did not appeal that ruling.

In support of its motion for summary judgment, Bear Lake County argued that Sheriff Stacey was not an "employee" of the County as that term is defined in Idaho Code § 6–902(4). The district court held, however, that there was an issue of fact regarding whether Sheriff Stacey was acting as Bear Lake County's "agent or servant." When doing so, the district court did not address whether there were any facts supporting the contention that Sheriff Stacey was an "em-

ployee" as that term is defined in the Idaho Tort Claims Act. The court granted summary judgment to Bear Lake County on the ground that even if Sheriff Stacey was its agent, his conduct did not rise to the level of reckless disregard.

■ On appeal, Bear Lake County and Deputy Athay argue that Sheriff Stacey was not an employee of the County as defined in the Idaho Tort Claims Act. That Act provides that a governmental entity can be liable for the "negligent or otherwise wrongful acts or omissions ... of its employees acting within the course and scope of their employment or duties." I.C. § 6–903(a). "For a governmental entity to be held liable the actor must fit the description of an employee within the terms of the statute." *Blankenship v. Kootenai County*, 125 Idaho 101, 103, 867 P.2d 975, 977 (1994). Under the Act, an employee includes "persons acting on behalf of the governmental entity in any official capacity, temporarily or permanently in the service of the governmental entity, whether with or without compensation." I.C. § 6–902(4). In construing this statute in *Blankenship*, we stated, "An employee is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the service is subject to the other's control." 125 Idaho at 103, 867 P.2d at 977. For someone to be employed to perform services in the affairs of another, the alleged employer must expressly or impliedly agree to the creation of that employment relationship. Because of the vicarious liability that a governmental entity can have for the acts of its employees, a person cannot become the employee of a governmental entity without its agreement.

The only person who could arguably have agreed to make Sheriff Stacey an employee of Bear Lake County is Deputy Athay. The parties have not addressed whether Deputy Athay had the authority to employ someone to perform services for the County. For the purposes of this decision, we will assume that he did. Assuming that he had the authority, there is no evidence that he did anything that reasonably could be construed as expressly or impliedly employing Sheriff Stacey to per-

form any services on behalf of Bear Lake County.

Because Sheriff Stacey entered Idaho in fresh pursuit of the Mustang's driver and had reasonable ground to believe he had committed the felony offense of eluding in Utah, Sheriff Stacey had the same authority to arrest the driver as a peace officer of this state. I.C. § 19–701. He did not need permission from Bear Lake County authorities to pursue and arrest Ervin. He asked Deputy Athay to assist in trying to stop the Mustang with spike strips. Upon the approval of the Bear Lake County Sheriff, Deputy Athay directed Deputy Ludwig to do so. Deputy Athay did not ask Sheriff Stacey to chase the Mustang into Bear Lake County, nor is there evidence that he asked Sheriff Stacey to do anything. After the Mustang drove over the spike strips, there were no conversations between Sheriff Stacey and Deputy Athay until Deputy Athay told everyone to back off. Telling Sheriff Stacey to back off is not an offer of employment, and his obedience to that request is not the acceptance of employment.

In trying to establish an employment relationship, the Plaintiff relies upon the deposition of Sheriff Stacey during which he testified that it was his understanding that Deputy Athay was in control of the pursuit once it entered Bear Lake County. The testimony relied upon by the Plaintiff is as follows:

> Q. From the time you entered into Idaho did you consider yourself as in charge of the pursuit or did you consider Bear Lake County officers as those who had ultimate responsibility for the decision making relating to the pursuit?
>
> A. The Bear Lake County officers.
>
> Q. And who was that who was, to your knowledge, the officer in charge of the pursuit at that time?
>
> A. Gregg Athay.
>
> . . . .
>
> Q. Had you ever been involved in any pursuits with Deputy Athay before then?

6. Deputy Ludwig did not have a radio in his vehicle that could communicate with the radio in

> A. No.
>
> Q. I understand from your report that you had called ahead and requested that they get spike strips out on the road; is that correct?
>
> A. Yes.
>
> Q. Did they comply with that request?
>
> A. Yes, they did.
>
> . . . .
>
> Q. Did you have any conversations with Deputy Athay between the time of the vehicle being spiked and the time that you entered into Montpelier?
>
> A. I don't know.
>
> Q. Did you discuss with Deputy Athay at any time on the radio traffic the situation regarding how the suspect had slowed down in Cokeville and how that might affect the decision making process?
>
> A. I believe I did, yes.
>
> Q. Do you recall, can you tell me what you recall of that conversation?
>
> A. What I recall of it, I believe I mentioned to him that the suspect had slowed in Cokeville and that perhaps he would do that in Montpelier also.
>
> Q. Do you recall what Deputy Athay's response was to that?
>
> A. I don't.
>
> Q. Do you have any recollection of Deputy Athay giving the command to keep right on the suspect's tail and force him off the road or any of those types of—well, do you recall him ever telling everybody to step on it and keep right on his tail?
>
> A. No.
>
> . . . .
>
> Q. Did you ever have any radio communications with Deputy Ludwig?
>
> A. No.[6]
>
> Q. You talked about the fact that as you were leaving Montpelier, and you weren't sure of the exact sequence, but at some point Deputy Athay gave the order to back off.
>
> A. Yes, he did.

Sheriff Stacey's vehicle.

Q. Did he explain why he gave that order?

A. Yes.

Q. And why was that?

A. Something along the lines of let's give him some room and see if he will slow down and also I believe he mentioned that he had called Caribou County and that they were sending some officers that direction, also.

Q. When he gave you that order, did you then back off?

A. Yes, I did.

■ Although Sheriff Stacey testified that it was his understanding that Deputy Athay was in charge, that is insufficient to establish an agreement by Bear Lake County to employ Sheriff Stacey. A person's subjective understanding is insufficient to establish an express or implied agreement. *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 179, 75 P.3d 733, 740 (2003). Nowhere in his testimony did Sheriff Stacey state that Deputy Athay ever asked him to do anything in an attempt to catch the fleeing Mustang. Nowhere is there any evidence of any agreement between Bear Lake County and Rich County that when an officer from one of the counties pursues someone into the other, the pursuing officer becomes an employee of that county. There is no course of conduct from which one could infer an agreement to employ Sheriff Stacey. Sheriff Stacey did not testify that Deputy Athay ever stated he was in charge. The Plaintiff relies heavily upon the fact that Sheriff Stacey complied when Deputy Athay said to back off. Compliance with that request is insufficient to show that Sheriff Stacey was an employee of Bear Lake County prior to the request.

Deputy Athay's deposition would not support a finding that he employed Sheriff Stacey on behalf of Bear Lake County. Deputy Athay testified that he was in charge of only himself and Deputy Ludwig, that Sheriff Stacey was in charge of himself, that he and Deputy Ludwig were assisting Sheriff Stacey, and that he had no control over Sheriff Stacey. His testimony was as follows:

Q. Then it [Deputy Athay's affidavit] says, "Because the car was then leaving Montpelier, I ordered that everybody back off even more." Were you in charge at this point in time?

A. I was in charge of me and Deputy Ludwig.

Q. And do you know, did you consider yourself as being in charge of Sheriff Stacey?

A. No.

Q. Had he requested your assistance?

A. Yes.

Q. And you were assisting him?

A. That's correct.

. . . .

Q. Does that mean he was in charge?

A. That means he's in charge of Dale. He doesn't give me direction. I don't have any control over him either.

There is simply no evidence supporting the contention that Sheriff Stacey was an employee of Bear Lake County during the pursuit. Therefore, there is no basis for holding Bear Lake County liable for his conduct under the Idaho Tort Claims Act.

■ Relying upon Idaho Code § 6–803(5),[7] the Plaintiff also argues that Deputy Athay could be jointly and severally liable for any damages awarded against Sheriff Stacey because they were acting in concert during the pursuit in that they were pursuing a common plan which resulted in the commission of a reckless tortious act. The action against Bear Lake County is based upon the Idaho Tort Claims Act. That act provides, "[T]he governmental entity is subject to liability only for the pro rata share of the total damages awarded in favor of a claimant which is attributable to the negligent or oth-

7. Idaho Code § 6–803(5) provides:

A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

erwise wrongful acts or omissions of the governmental entity or its employees." I.C. § 6–903(a). Bear Lake County can be liable only for the conduct of its employee Deputy Athay. It cannot be liable for the conduct of Sheriff Stacey. Therefore, joint and several liability does not apply. "Where two statutes appear to apply to the same case or subject matter, the specific statute will control over the more general statute." *Gooding County v. Wybenga*, 137 Idaho 201, 204, 46 P.3d 18, 21 (2002). Idaho Code § 6–803 is a general statute, while Idaho Code § 6–903(a) is a specific statute limiting the liability of governmental entities. The district court did not err in dismissing this action as to Bear Lake County.

**D. Did the District Court Err in Dismissing the Complaint as to Rich County?**

■ **1. Did the district court err in holding that the claim against Rich County was barred by the failure to give timely notice of a tort claim under the Idaho Tort Claims Act?** Almost one year after the accident, the Plaintiff gave Rich County a notice of tort claim. The district court held that the notice was untimely under Idaho Tort Claims Act. Idaho Code § 6–906 requires that all claims against a political subdivision or its employee arising under the provisions of the Act must be filed with the clerk of the political subdivision within one hundred eighty days. The term "political subdivision" is defined to include "any county." I.C. § 6–902(2). The district court held that the words "any county" were not state specific and would include Rich County, Utah. In so holding, the district court erred.

■ The Idaho Tort Claims Act is a legislative waiver of the State of Idaho's sovereign immunity. *Dunbar v. United Steelworkers of America*, 100 Idaho 523, 529, 602 P.2d 21, 27 (1979). Idaho has no power to waive the sovereign immunity of another state. The Act makes "every governmental entity" subject to liability for money damages in tort under specified circumstances. I.C. § 6–903(a). A "governmental entity" is defined as "the state and political subdivisions as herein defined." I.C. § 6–902(3). The word "state" means "the state of Idaho or

any office, department, agency, authority, commission, board, institution, hospital, college, university or other instrumentality thereof." I.C. § 6–902(1). In the context of the Act, the term "political subdivision" means a political subdivision of the State of Idaho, not a political subdivision of another state. The Act by its terms does not apply to other states or their political subdivisions.

Prior to the appeal in *Athay I*, Rich County asked the district court to apply Utah law under the doctrine of comity. The district court refused to do so, and Rich County did not appeal that ruling. In a petition for rehearing, Rich County asks this Court to apply, under the doctrine of comity, either the Idaho Tort Claims Act or Utah law. It contends that there is a basis for dismissing the claim as to it under either state's law. Both parties have briefed the issue of comity, and we will address it.

■ "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct.*, 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461, 483 n. 27 (1987). It has been characterized as a "golden rule" among sovereigns. *Black's Law Dictionary* 261–62 (7th ed., West 1999).

■ Our Territorial Supreme Court recognized the doctrine in *Barnett v. Kinney*, 2 Idaho 706, 23 P. 922 (1890). A citizen of the Utah Territory had made an assignment for the benefit of his creditors, which preferred certain classes of creditors. The assignment was made in Utah and was valid under that territory's law, but it included some personal property located in Idaho. Three days after the assignment had been made, a foreign corporation executed upon that personal property under a writ of attachment issued by an Idaho court in an action where the foreign corporation was plaintiff and the Utah citizen was defendant. The issue was whether under the doctrine of comity the assignment for the benefit of creditors made in Utah and valid under that territory's law should be recognized in Idaho. Our Territo-

rial Supreme Court framed that issue as follows: "The only question remaining in this connection is, was the assignment made by Lipman [the Utah citizen], under the laws of Utah territory, contrary to a clearly expressed statute or to the settled policy of this territory?" *Id.* at 745, 23 P. at 923. The Court held it was contrary to both, but that holding was later reversed by the United States Supreme Court. *Barnett v. Kinney,* 147 U.S. 476, 13 S.Ct. 403, 37 L.Ed. 247 (1893). Nevertheless, the principle is valid that another state's law will not be applied pursuant to the doctrine of comity if doing so would be contrary to a clearly expressed statute or the settled policy of this state. *Pacific Finance Corp. v. Axelsen,* 84 Idaho 70, 77, 368 P.2d 430, 433 (1962) ("We, therefore, hold that the rule of comity does not contravene 'the statute or settled law or policy of the forum,' . . . .").

Our State Supreme Court first recognized the doctrine over one hundred years ago in *Thum v. Pyke Ogden Sav. Bank,* 8 Idaho 11, 66 P. 157 (1901). Two Utah corporations doing business exclusively in Idaho had been placed in receivership in Idaho, and their assets were under the control of the Idaho court. One of the corporations was solvent, but it had pledged its corporate stock as security for a loan made to it by the corporation that later became insolvent. With knowledge of the receivership, a Utah creditor obtained a judgment in a Utah court against the insolvent corporation and executed upon the solvent corporation's stock being held in Utah as security for the loan from the insolvent corporation. Based upon that judgment and execution sale, the creditor asserted in Idaho that because it was the owner of the solvent corporation's stock, it was entitled to all that corporation's assets. The net value of those assets was almost double the amount of the creditor's claim. In refusing to allow the creditor to obtain the assets to the detriment of other creditors, this Court stated, "Comity between states requires our courts to treat citizens of other states the same as our own, but no better." 8 Idaho at 23, 66 P. at 160.

This Court has not been called upon to address the doctrine of comity with respect to the issue of the sovereign immunity of another state, or that state's political subdivisions, or their respective employees when acting in the scope of their employment or authority. The Constitution of the United States does not protect one State from being sued in the courts of another State. *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). Likewise, "the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." *Id.* at 422, 99 S.Ct. at 1189, 59 L.Ed.2d at 426.

In applying the *doctrine of comity,* there are two options: applying the other state's law or applying Idaho law. As stated above, we will not apply another state's law under the doctrine of comity if doing so would be contrary to a clearly expressed statute or the settled policy of this state. *Pacific Finance Corp. v. Axelsen; Barnett v. Kinney.* States that have not entirely waived their sovereign immunity have imposed requirements such as the timely filing of a notice of claim, a waiting period before filing a lawsuit, a statute of limitations, exemptions from governmental liability, and limits on damages, including punitive damages. At the time of the accident in this case, all of those provisions in the Utah Governmental Immunity Act differed from the corresponding provisions of the Idaho Tort Claims Act. For example, the time for filing a notice of tort claim under the Utah Act was one year, former U.C. § 63–30–12, while the comparable provision of the Idaho Act requires that adults file the notice within 180 days, I.C. §§ 6–905 & 6–906. The Utah Act contained an exemption from liability in certain circumstances if the injury arose out of the operation of an emergency vehicle, former U.C. § 63–30–10,[8] while the Idaho Act did not contain such an exemption.

---

8. Former U.C. § 63–30–10 provided that immunity from suit was not waived for injuries arising out of "the operation of an emergency vehicle, while being driven in accordance with the requirements of Section 41–6–14." The latter Section requires the operator of an emergency vehicle involved in a pursuit to use an audible signal and flashing lights that meet statutory requirements for loudness and visibility.

Likewise, the Utah Act had a $250,000 damage limit for personal injury to a single person in one occurrence, former U.C. § 63–30–34, while the damage limit under the Idaho Act was $500,000 per occurrence regardless of the number of persons injured, I.C. § 6–926.[9]

Our decision on how to apply the doctrine of comity must also give guidance to our trial courts when a tort action is brought in an Idaho court against another state, its political subdivision, or their respective employees when acting in the scope of their employment or authority. Idaho adjoins six states and a Canadian province, all of which have differing statutes. If we were to pick certain provisions of the Utah Act to apply to this case, it would not give much guidance to trial courts when other sovereigns are defendants in Idaho courts, or if Utah changes the provisions of its Act. The policy of this State regarding tort actions against governmental entities is set out in the Idaho Tort Claims Act. Applying that Act when another State is a defendant in a tort action brought in an Idaho court would be treating that State in the same manner as our State would be treated, and it would be consistent with the policy of this State.

■ Based upon the most significant relation test utilized in *Grover v. Isom*, 137 Idaho 770, 772–73 53 P.3d 821, 823–24 (2002), the district court determined that Idaho law should apply to this action. In a case such as this where Idaho law applies under the proper choice-of-law analysis, we will apply, pursuant to the doctrine of comity, the relevant provisions of the Idaho Tort Claims Act when a cause of action seeking money damages for negligent or wrongful acts or omissions is asserted against another State, its political subdivisions, or their employees.

■ Because we have never before been asked to apply the doctrine of comity in a tort action against another state, we are announcing a new rule of law. This Court has the discretion to decide whether a new rule of law will be applied to all pending and future cases, or only to future cases, or to future cases and the case in which the rule was announced. *Thompson v. Hagan*, 96 Idaho 19, 25, 523 P.2d 1365, 1371 (1974). Although we will apply this new rule to all pending and future cases, we will apply the time limit for giving a notice of tort claim only to causes of action that arise after the date of this opinion. Applying that time limit to the present case would result in the Plaintiff's action being dismissed for the failure to file notice of his tort claim against Rich County within one-hundred eighty days. Giving that provision only prospective application would avert injustice to the Plaintiff, since the Plaintiff did not have notice that the relevant provisions [10] of the Idaho Tort Claims Act would be extended to Rich County. Rich County will not be prejudiced because the Plaintiff gave notice within the time period that would have been permitted under Utah law.

■ **2. Did the district court err in concluding that Sheriff Stacey's conduct did not rise to the level of reckless disregard?** In *Athay I*, we held that there was a genuine issue of material fact as to whether Sheriff Stacey's conduct rose to the level of reckless disregard. 142 Idaho at 369, 128 P.3d at 906. On remand, the district court held that because Sheriff Stacey did not know of the deer-vehicle collision north of Montpelier, Sheriff Stacey's conduct did not rise to the level of reckless disregard. As explained above, it is not necessary that Sheriff Stacey know of the deer-vehicle collision for his conduct to rise to the level of reckless disregard.

9. The statute also provides that the damages limit could be increased if "the governmental entity has purchased applicable, valid, collectible liability insurance coverage in excess of said limit, in which event the controlling limit shall be the remaining available proceeds of such insurance." I.C. § 6–926.

10. This Court does not have authority to apply certain provisions of the Idaho Tort Claims Act to another State or its political subdivisions. They are the provisions regarding the compromise and settlement of claims, I.C. §§ 6–912 & 6–913; provisions regarding the purchase of liability insurance, I.C. §§ 6–919, 6–920, 6–921, 6–923, 6–924 & 6–925; the provision for payment of a judgment or claim against the State when it has not obtained insurance, I.C. § 6–922; and the provisions for levying taxes, I.C. §§ 6–927 & 6–928.

In *Athay I*, we noted evidence that Ervin turned the headlights and taillights of the Mustang off as he raced through Montpelier. With respect to that, we stated, "A reasonable inference is that Sheriff Stacey knew that upon leaving Montpelier the Mustang's lights were off, creating a greater hazard that other drivers would not see the Mustang or that the driver of the Mustang would not see other persons or vehicles on the highway in time to avoid a collision." *Id.* This was given as one of several factors the jury could consider in deciding whether Sheriff Stacey's conduct rose to the level of reckless disregard.

On remand, the Utah Defendants presented an enhanced version of the video taken from Deputy Ludwig's vehicle. They contend that it shows that the taillights of the Mustang were on and therefore Sheriff Stacey could not have known that Ervin had turned off the vehicle's headlights. There is an affidavit in the file from a bystander who stated that when the Mustang went through Montpelier, neither its headlights nor its taillights were on. There is a genuine issue of material fact as to whether the Mustang's taillights were on.

Sheriff Stacey was an employee of Rich County during this pursuit. There is no contention that Rich County would not be liable if he were found by the jury to have acted in reckless disregard. Because there are genuine issues of material fact to be resolved as to whether he did, we vacate the grant of summary judgment in favor of Rich County.

### E. Did the District Court Err in Holding that Sheriff Stacey and Ervin Were Not Acting in Concert?

The Plaintiff filed a motion for partial summary judgment seeking, among other things, a determination that Sheriff Stacey and Ervin were acting in concert and therefore would be jointly and severally liable pursuant to Idaho Code § 6–803(5). In order to be held jointly and severally liable, Sheriff Stacey and Ervin would have to have been "acting in concert," which the statute defines as "pursing a common plan or design which results in the commission of an intentional or reckless tortious act." The district court held that as a matter of law they were not acting in concert and denied the motion for partial summary judgment. On appeal, the Plaintiff argues that Sheriff Stacey and Ervin "were 'pursuing a common plan or design' to travel down the highways of Utah, Idaho, and Wyoming at night at speed in excess of 95 miles per hour." Because we have vacated the summary judgment against Rich County, this is an issue that must still be decided. If Sheriff Stacey and Ervin were jointly and severally liable, that would increase the liability of Rich County.

Sheriff Stacey was pursuing Ervin to arrest him. Ervin was attempting to evade arrest. They were not pursuing a common plan or design. The district court was correct in holding that Sheriff Stacey and Ervin could not be held jointly and severally liable pursuant to Idaho Code § 6–803(5). In addition, because we have applied the relevant provisions of the Idaho Tort Claims Act to Utah under the doctrine of comity, Rich County could only be liable for the pro rata share of the total damages awarded in favor of the Plaintiff which is attributable to the reckless disregard of its employee, Sheriff Stacey. I.C. § 6–903(a). It could not be jointly and severally liable with Ervin.

### F. Is Either the Plaintiff, Sheriff Stacey, or Rich County Entitled to an Award of Attorney Fees on Appeal?

The Plaintiff seeks an award of attorney fees on appeal pursuant to Idaho Appellate Rules 40 and 41. "Idaho Appellate Rule 40 provides for the awarding of costs on appeal, and Rule 41 specifies the procedure for requesting an award of attorney fees on appeal. Neither rule provides the authority for awarding attorney fees." *Gilman v. Davis*, 138 Idaho 599, 603, 67 P.3d 78, 82 (2003). Because the Plaintiff has not cited any statutory or contractual authority supporting his request for an award of attorney fees, he cannot be awarded attorney fees. *Id.*

Sheriff Stacey and Rich County seek an award of attorney fees on appeal pursuant to Idaho Appellate Rule 40. Because they have not cited any statutory or contractual authority supporting their request for an award of

attorney fees, they cannot be awarded attorney fees. *Id.*

## IV. CONCLUSION

We vacate the judgment dismissing this action as to Rich County, Utah, and we affirm the remainder of the judgment. We award costs on appeal to Deputy Athay and Bear Lake County.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.

