196 P.3d 341

**Robert JOHANNSEN, Plaintiff–Respondent–Cross Appellant,**

v.

**Robert W. UTTERBECK; Brookside, LLC, an Idaho limited liability company, Defendants–Appellants–Cross Respondents.**

**No. 34023.**

Supreme Court of Idaho, Idaho Falls, September 2008 Term.

Oct. 16, 2008.

Cox, Ohman & Brandstetter, Chartered., Idaho Falls, for appellant. John Ohman argued.

Beard, St. Clair, Gaffney, PA, Idaho Falls, for respondent.  Michael Gaffney argued.

W. JONES, Justice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 2001, Robert Utterbeck ("Appellant") and Robert Johannsen ("Respondent") formed Brookside, LLC ("LLC") to develop the Brookside subdivision ("Brookside"). Soon thereafter the parties executed the LLC Operating Agreement, which includes the following relevant clauses:

2.04. Capital Contributions. A member's capital contributions to the Company may consist of cash, property, services rendered, or a binding written promise to contribute cash, property or services in the future. The value of all capital contributions shall be determined by the members. A member shall not be entitled to withdraw a capital contribution without the consent of all other members. A member shall not be entitled to interest on or with respect to any capital contribution. Additional capital contributions may be made by a member only with the consent of all other members. The capital contributions required of new members shall be determined by the existing members. The initial capital contributions and the initial proportionate ownership interests of the initial members of the Company are set forth in Exhibit A.

It is anticipated that the Capital Contributions of each of the initial members, [sic] shall be contributed by each as follows:

1. Robert Johannsen shall contribute certain real property to the limited liability company herein, and shall be given a credit for said contribution of said real property, in an amount equal to $8,000.00 per acre, or any pro-rata amount contributed.

2. Robert Utterbeck shall contribute cash to the limited liability company, in an amount equal to the value as indicated above for the capital contribution of Robert Johannsen's real property.

This arrangement for capital contributions shall be contributed incrementally during the development of the development project as the members shall agree.

. . . .

3.01. Management by Members. The Company shall be managed by the members. The Company shall not have managers within the meaning of the Idaho Limited Liability Company Act. No member shall be entitled to compensation for managing the Company unless otherwise approved in advance by the members.

3.02. Authority of Members. Subject to the provisions of the foregoing section, each member may exercise all powers of the LLC and perform any lawful act or function deemed necessary or appropriate in the ordinary course of the Company business, except as otherwise provided in the Operating Agreement. However, a member may not perform any of the following acts or functions without the written consent of all members:

. . . (4) Incur a Company liability in excess of $2,000.00.

A preliminary plat showed Brookside was to be comprised of approximately 57 acres. By September 2004, Respondent deeded approximately 27 of the contemplated 57 acres of real property to the LLC in three separate transactions. During trial Appellant admitted that it took him a full year to make final payment to the LLC in an amount equal to the value of real property contributed by Respondent.

By late 2005 the relationship between Respondent and Appellant broke down and Respondent filed suit against Appellant and the LLC for breach of contract, an accounting and dissolution of the LLC. Respondent alleged in the complaint that Appellant failed to make required capital contributions in violation of the Operating Agreement and that he acted beyond the scope of his authority by, among other things, incurring unauthorized debts on behalf of the LLC. Appellant filed an answer including affirmative defenses and a counterclaim for breach of contract, an accounting and dissolution.[1] In June

---

1. Appellant also filed claims against Respondent for breach of fiduciary duty and intentional in-

fliction of emotional distress, but the district court granted Respondent's motion for a directed

2006, the district court appointed a receiver to carry out an accounting for dissolution and to wind up the LLC.

In October 2006, Respondent filed a motion for summary judgment and a motion to preclude Appellant, under the parol evidence rule, from presenting evidence as to the intent and interpretation of the Operating Agreement. Respondent argued that the Operating Agreement was unambiguous and did not require him to contribute any particular amount of land to the LLC and that since the document was unambiguous, Appellant should be precluded from introducing any evidence as to the parties' intent. In ruling on the motion, the court found that the language "certain real property" in the Operating Agreement was ambiguous. It then held that parol evidence could be used to resolve the ambiguity. The court's written decision is perplexing and contradictory. After stating that the phrase "certain real property" was ambiguous, the court went on to state that "[t]he documents subsequently signed by Respondent[2] resolved the ambiguity and indicate that the approximately 57 acres were destined to be used in the Brookside Development." Not only would it be inappropriate for the court to resolve ambiguous language on a motion for summary judgment, since such a matter would be for the jury, but the court went on in its written decision to hold that since the contract was ambiguous, summary judgment must be denied. On appeal, Appellant argues that the court's language that "the approximately 57 acres were destined to be used in the Brookside Development" establishes the law of the case and that the jury should have been so instructed.

The case proceeded to a jury trial, resulting in a verdict finding that Respondent did not breach the contract. Appellant then filed a motion for JNOV or, in the alternative, a new trial, both of which the court denied. The court held a hearing on dissolution and winding up of the LLC and found that Appellant was not entitled to be paid for any

management services and further held there was no evidence presented establishing intangible rights or assets in either of the parties. The court then entered an order distributing liabilities and dividing assets according to each party's equity.

The district court found Respondent to be the prevailing party and awarded him $10,000.00 in attorney's fees and $800.00 in costs.

## II. ISSUES ON APPEAL

Appellant Robert Utterbeck raises the following issues on appeal:

(1) Did the district court establish the law of the case in its opinion denying Respondent's motion for summary judgment?

(2) Did the district court err in denying Appellant's motion for JNOV, or in the alternative, for a new trial?

(3) Did the district court err in denying Appellant's motion for a mistrial?

(4) Was the Order of Final Dissolution clear error?

Respondent/Cross–Appellant Robert Johannsen raises the following issue on his cross-appeal:

(1) Did the district court abuse its discretion in awarding Respondent only $10,000 in attorney's fees?

Both Appellant and Respondent seek attorney's fees on appeal. We will discuss each of these issues in turn.

## III. ANALYSIS

**A. Did the district court establish the law of the case in its written opinion denying respondent's motion for summary judgment?**

In this case the district court issued a written order denying summary judgment on the issue of whether the Operating Agreement required Respondent to contribute a

---

verdict as to those claims. They are not at issue on appeal.

**2.** The documents to which the court refers include protective covenants for Brookside and the

preliminary plat; Appellant argues that both documents prove that Brookside was intended to be comprised of 57 acres.

specific amount of real estate to the LLC. As noted above, the written order is problematic because the district court entered findings that directly contradict its conclusion. After stating the proper standard of review, the district court determined that the phrase "certain real property" in the Operating Agreement could be interpreted in more than one way, so it found the agreement ambiguous as a matter of law as to whether Respondent was required to contribute a specific amount of land to the LLC.

■ We agree that the phrase "certain real property" as used in the Operating Agreement is ambiguous. It is clear that the ambiguity creates an issue of fact precluding summary judgment and that parol evidence is admissible to clarify an ambiguous contract. *See Cannon v. Perry,* 144 Idaho 728, 170 P.3d 393 (2007); *Swanson v. Beco Const. Co., Inc.,* 145 Idaho 59, 175 P.3d 748 (2007); *Howard v. Perry,* 141 Idaho 139, 106 P.3d 465 (2005). Appellant seizes upon the language in the district court's opinion that "the approximately 57 acres were destined to be used in the Brookside Development" as resolving any ambiguity and argues that the jury should have been instructed that the parties intended that all 57 acres be contributed to the LLC. Appellant's argument, however, is flawed. Despite the poor choice of language used by the district court, it is obvious that the court did not intend to finally resolve the ambiguity in the Operating Agreement, or it would not have denied summary judgment and proceeded with a jury trial to determine the meaning of the ambiguous contract. Moreover, the district court did not have the authority to resolve the ambiguity, since it was not within the province of the district court to resolve factual issues in a motion for summary judgment. Whether the parties intended that all 57 acres be contributed to the LLC was a factual matter to be left for the jury to decide.

During trial, Respondent argued that the Operating Agreement does not identify a specific amount of property that he was required to contribute. He relied upon the language in the Operating Agreement that "capital contributions shall be contributed *incrementally* during the development of the

development project *as the members shall agree,"* arguing that such language indicates that the real property was to be contributed in portions, thus permitting, but not requiring, Respondent to contribute the entire 57 acres.

At trial, Appellant referred to the preliminary plat showing 57 acres in Brookside and called several witnesses to testify that from the beginning Brookside was intended to be comprised of the entire 57 acres.

Since the decision of the district court did not establish the "law of the case" it would not have been appropriate to instruct the jury that the court had resolved that ambiguity. Indeed, such an instruction would have obviated the need for the jury trial. The jury heard the evidence, observed the witnesses, and rendered its decision based on the evidence, resolving the ambiguity in favor of the Respondent.

**B. The district court did not err in denying Appellant's motion for JNOV, or in the alternative, for a new trial.**

■ Appellant argues that the district court erred when it failed to grant his motion for JNOV, or in the alternative, for a new trial. In determining whether denial of a JNOV motion was proper, the question is whether "giving deference to the district court and drawing all inferences in favor of the jury's verdict, there is substantial and competent evidence to support the verdict." *Hall v. Farmers Alliance Mut. Ins. Co.,* 145 Idaho 313, 324, 179 P.3d 276, 287 (2008) (*citing Horner v. Sani–Top, Inc.,* 143 Idaho 230, 238, 141 P.3d 1099, 1107 (2006)). "The standard of review of a grant or denial of a motion for JNOV is the same as that of the trial court when ruling on the motion." *Hall,* 145 Idaho at 324, 179 P.3d at 287 (2008) (*citing Gillingham Const., Inc. v. Newby–Wiggins Const., Inc.,* 142 Idaho 15, 20, 121 P.3d 946, 951 (2005)). "A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury." *Id.* "In reviewing a grant or denial of a motion for JNOV the court may not reweigh evidence, consider

witness credibility, or compare its factual findings with that of the jury." *Id.* The court must "review all the evidence and draw all the reasonable inferences therefrom in the light most favorable to the non-moving party." *Schwan's Sales Enterprises, Inc. v. Idaho Transp. Dept.,* 142 Idaho 826, 830, 136 P.3d 297, 301 (2006) (citation omitted).

In arguing against the district court's decision regarding his JNOV motion, Appellant appears to misunderstand the central issue before the jury in this case, which was whether the Operating Agreement required Respondent to contribute the entire 57 acres to the LLC. To support his JNOV argument, Appellant claims that Respondent admitted liability on the stand and therefore the only question before the jury was the amount of damages Appellant incurred by Respondent withholding the remaining 30 acres. Appellant's argument is unfounded. Respondent did not admit liability during trial. Rather, he has maintained throughout the lawsuit that the Operating Agreement only required him to contribute property to the LLC incrementally as the parties agreed. Reasonable minds could have reached a conclusion similar to that of the jury, that Respondent did not breach the contract by failing to contribute the entire 57 acres. Appellant admitted that he did not timely contribute cash to the LLC in violation of the Operating Agreement, and Respondent then declined to contribute additional real property to the LLC. Viewing the evidence in the light most favorable to Respondent, we hold that there is substantial and competent evidence to support the jury's verdict in favor of Respondent.

■ Appellant challenges the district court's denial of his motion for a new trial under I.R.C.P 59(a)(1), (2), (5), and (6). On appeal, this Court reviews a district court's decision to grant or deny a new trial for an abuse of discretion and will not disturb that decision absent a manifest abuse of this discretion. *Lanham v. Idaho Power Co.,* 130 Idaho 486, 497–98, 943 P.2d 912, 923–24 (1997) (citation omitted). A trial court does not abuse its discretion if it (1) recognizes the issue as one of discretion, (2) acts within the boundaries of its discretion and applies the applicable legal standards, and (3) reaches the decision through an exercise of reason. *In re Jane Doe, I,* 145 Idaho 650, 651, 182 P.3d 707, 708 (2008) (*citing Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

■ Under I.R.C.P. 59(a)(1), a trial court may grant a new trial for "irregularity in the proceedings of the court … by which either party was prevented from having a fair trial." I.R.C.P. 59(a)(1). Any motion for a new trial based upon this ground must be accompanied by an affidavit stating in detail the facts relied upon in support of such motion. I.R.C.P. 59(a)(7). Appellant procedurally defaulted on this ground by failing to file an affidavit to accompany his motion for a new trial. Thus, we hold that the trial court did not manifestly abuse its discretion in denying Appellant's motion for a new trial based on I.R.C.P. 59(a)(1).

■ Appellant also seeks relief under I.R.C.P. 59(a)(2) for misconduct of the jury, but he failed to raise this issue as a ground for a new trial before the district court. "To properly raise an issue on appeal there must either be an adverse ruling by the court below or the issue must have been raised in the court below, [sic] an issue cannot be raised for the first time on appeal." *Garner v. Bartschi,* 139 Idaho 430, 436, 80 P.3d 1031, 1037 (2003) (*citing McPheters v. Maile,* 138 Idaho 391, 397, 64 P.3d 317, 323 (2003)). Appellant procedurally defaulted on this issue by raising it for the first time on appeal. Consequently, we will not consider Appellant's argument.

■ Under I.R.C.P. 59(a)(5), a trial court may grant a new trial for "excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice." I.R.C.P. 59(a)(5). Appellant challenges the jury's decision not to award him damages, but Appellant was not the prevailing party in this case. Here the jury found that Respondent did not breach the agreement and entered a verdict against Appellant. It would have been an absurd result if the district court had awarded damages to Appellant after the jury entered a verdict in favor of Respondent. We hold that the dis-

trict court did not abuse its discretion when it refused to grant a new trial based on the losing party's argument that he was awarded inadequate damages.

■ Under I.R.C.P. 59(a)(6), a district court may grant a new trial based on the ground of "insufficiency of the evidence to justify the verdict or other decision." I.R.C.P. 59(a)(6). "A trial judge may grant a new trial on that ground if, after making his or her own assessment of the credibility of the witnesses and weighing the evidence, the judge determines that the verdict is not in accord with the clear weight of the evidence." *Hudelson v. Delta Intern. Machinery Corp.*, 142 Idaho 244, 248, 127 P.3d 147, 151 (2005) (*citing Karlson v. Harris*, 140 Idaho 561, 568, 97 P.3d 428, 435 (2004)). Any motion for a new trial based on insufficiency of the evidence must "set forth the factual grounds therefor with particularity." I.R.C.P. (59)(a)(7). This Court has been consistent in recognizing the district court's important function in passing on motions for new trial, and upholding the district court's grant or denial of such a motion, unless the district court has manifestly abused the wide discretion vested in it. *See Robertson v. Richards*, 115 Idaho 628, 632, 769 P.2d 505, 509 (1989). Here the district court judge stated, "I exercise my discretion and can only grant this motion if I'm convinced the verdict is not in accord with the clear weight of the evidence ..." He continued, "... it was a good trial, a good issue, and the jury decided it one way. They could have gone the other way, but they went the way they did and found no breach of contract." Here, the district court recognized Appellant's motion for a new trial as an issue of discretion, it acted within the bounds of the law, properly applied the applicable legal standard and reached its decision through an exercise of reason by explaining that the issue was one for the jury and that it made a reasonable determination based on the evidence before it. We hold that the district court did not manifestly abuse its discretion in denying Appellant's motion for a new trial based on insufficiency of the evidence.

Appellant also alleges that his case was prejudiced because he was referred to as plaintiff during trial even though he did not initiate the lawsuit. It is unclear on what grounds Appellant assigns error to this issue. He appears to rely on broad-sweeping principles of law, including that the trial court may set aside a verdict whenever it fails to render substantial justice. *See Dinneen v. Finch*, 100 Idaho 620, 625, 603 P.2d 575, 580 (1979) (*quoting Rosenberg v. Toetly* 93 Idaho 135, 139, 456 P.2d 779, 783 (1969)). However, Appellant fails to explain how the district court abused its discretion in upholding the jury's verdict. Respondent originally filed suit against Appellant, but because Respondent dropped his breach of contract claim, the case proceeded to trial only on Appellant's counterclaim. The trial judge and parties agreed that, for purposes of presenting the case to the jury, the parties would be realigned with Appellant as plaintiff and Respondent as defendant. The court stated that it wanted to ensure that everybody was "happy" with the realignment and Appellant replied that his concerns were satisfied. During trial the court made the following statement to the jury to clear up any confusion about which party was plaintiff and which was defendant:

> The case was initially filed by Johannsen. There was a counterclaim by Utterbeck. But the parties agreed that it would be simpler for the jury to understand if we just realigned the parties because the major issues [sic] that the jury's [sic] going to decide is in the counterclaim. And rather than confusing the jury with the counterclaimants and counterdefendants and all this legal mumbo jumbo, the parties agreed that we would realign the parties and just call Utterbeck the plaintiff and Johannsen the defendant.

Appellant's argument that he was prejudiced is unpersuasive because, not only did he fail to object to the realignment of the parties, he affirmatively agreed to it. Moreover, any potential confusion by the jury was cured by the court's statement to the jury. We hold that the district court's realignment of the parties was not error.

**C. The district court did not err in denying Appellant's motion for a mistrial.**

■ Appellant challenges the district court's denial of his motion for a mistrial

under I.R.C.P. 47(u). The decision whether to declare or deny a mistrial is a matter within the discretion of the district court if the court determines that an occurrence at trial has prevented a fair trial. I.R.C.P. 47(u); *see also Van Brunt v. Stoddard*, 136 Idaho 681, 39 P.3d 621 (2001). This Court has long held that judgments will not be reversed by reason of misconduct of counsel at trial unless the appellate court is of the opinion that such misconduct had prevailing influence upon the jury to the detriment of appellant. *Kerby v. Oregon Short Line R. Co.*, 45 Idaho 636, 651, 264 P. 377, 381 (1928).

▬ Appellant claims there are two reasons why he did not receive a fair trial. First, he argues that Respondent improperly referred to the receiver as "Utterbeck's witness" and erroneously inferred in front of the jury that Appellant was hiding something by not providing the receiver's complete report to Respondent. In fact, the record is bereft of any reference by Respondent of the receiver as "Utterbeck's witness." Further, the record shows that Respondent did not purposefully create the impression that Appellant was hiding something. Rather, Respondent truthfully stated that he did not receive all the attachments to the receiver's report. Appellant gave the court a choice to either grant a motion for mistrial or to allow Respondent adequate time to review the receiver's complete report. Appellant stated, "To the extent you need a motion, we would move that the trial be continued until such time as ... the court allows [Respondent's attorney] to review whatever documents ... Or if that is not feasible, and I do appreciate the difficulty of that, that a mistrial be declared." The district court opted to give Respondent time to review the documents and Appellant indicated that he was satisfied with the court's decision. In this case Appellant did not properly raise a motion for a mistrial where he offered the court an alternative to his motion, but even if the motion were properly raised, we hold that the district court did not abuse its discretion in denying the motion for a mistrial because the

confusion about the receiver's report did not rise to the level of preventing Appellant from receiving a fair trial.

Second, Appellant argues he did not receive a fair trial because of Respondent's comment to the jury during closing arguments that they could "go home" if they answered the first question on the special verdict form in the negative.[3] Appellant's argument fails at the outset because he never objected to Respondent's statement and therefore waived any error. *See Garner*, 139 Idaho at 436, 80 P.3d at 1037 (finding there must be an adverse ruling at the district court for an appellate court to rule on an issue). However, even if Appellant had properly objected, his argument would fail because the language that Respondent used during closing was similar to language used on the special verdict form—that the jury was "done" if they answered in the negative. Moreover, no substantial error could have resulted due to Respondent's innocuous comment when taken in context with the entirety of his closing argument. We hold that Respondent's comments, even if improper, were not properly objected to and did not prejudice Appellant.

### D. The district court's Order of Final Dissolution did not constitute clear error.

▬ After trial, the district court judicially dissolved the LLC and distributed its liabilities and assets according to each party's equity. The Idaho Limited Liability Company Act does not provide a standard of review for judicial dissolution and winding up. *See* I.C. § 53–643. The LLC was dissolved without a jury, so we will evaluate the Order of Final Dissolution under I.R.C.P. 52(a), which provides the standard of review for non-jury district court findings of fact and conclusions of law. Findings of fact shall not be set aside unless clearly erroneous. I.R.C.P. 52(a). A court's findings of fact are not clearly erroneous if they are supported by substantial and competent, though conflicting, evidence. I.R.C.P. 52(a); *see also*

---

**3.** The Special Jury Verdict states, "Question No. 1: Did defendant Robert Johannsen breach the contract with plaintiff Robert Utterbeck? ... If you answered "No" to Question No. 1, then you are done."

*Lettunich v. Lettunich,* 141 Idaho 425, 429, 111 P.3d 110, 114 (2005) (*citing Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990)). The district court is the arbiter of conflicting evidence; its determination of the weight, credibility, inference, and implications thereof will not be supplanted by this Court's impressions or conclusions from the written record. *Boise Jr. College Dist. v. Mattefs Const. Co.,* 92 Idaho 757, 761, 450 P.2d 604, 608 (1969).

In this case, the district court entered findings of fact after examining the receiver's report, the LLC balance sheet, the Idaho Limited Liability Company Act, and conducting a hearing with the parties. Appellant argues that "the winding up of this LLC was unfair and the [c]ourt did not consider the [r]eceiver's determination concerning intangibles." However, as noted above, the district court found that there was no evidence presented establishing intangible rights or assets in either of the parties. After thoroughly examining the evidence, the district court ordered the receiver to pay accounts payable, including construction costs for three fences and attorney's fees for preparation of the dissolution order, and to distribute the remaining cash and assets according to each party's equity. The record shows that the district court's distribution of assets and liabilities is supported by substantial and competent evidence. Appellant has not shown clear error. Therefore, we affirm the district court's Order of Final Dissolution.

### E. The district court abused its discretion in determining the amount of attorney's fees awarded to Respondent.

■■■ In civil actions for commercial transactions attorney's fees are to be awarded to the prevailing party. I.C. § 12–120(3). The critical test in determining whether a civil action is for a commercial transaction is whether the commercial transaction comprises the gravamen of the lawsuit; it must be integral to the claim and constitute the basis upon which the party is attempting to recover. *Esser Elec. v. Lost River Ballistics Technologies, Inc.,* 145 Idaho 912, 921, 188 P.3d 854, 863 (2008). In *Lexington Heights Development, LLC v. Crandlemire,* 140 Idaho 276, 92 P.3d 526 (2004), this Court found that a commercial transaction existed where 90 acres of real property was to be developed into a subdivision. *Lexington Heights,* 140 Idaho at 287, 92 P.3d at 537. Similarly, the gravamen of this case is a commercial transaction where the Operating Agreement was entered into by the parties for the purpose of developing real property into a subdivision. Thus, I.C. § 12–120(3) is applicable.

■■■ The amount of attorney's fees to be awarded under I.C. § 12–120(3) is committed to the district court's discretion. *Lettunich,* 141 Idaho at 435, 111 P.3d at 120 (*citing Eastern Idaho Agricultural Credit Ass'n v. Neibaur,* 133 Idaho 402, 412, 987 P.2d 314, 324 (1999)). The burden is on the party opposing the award to demonstrate that the district court abused its discretion. *Eastern Idaho Agricultural Credit Ass'n,* 133 Idaho at 412, 987 P.2d at 324. As noted above, a trial court does not abuse its discretion if it (1) recognizes the issue as one of discretion, (2) acts within the boundaries of its discretion and applies the applicable legal standards, and (3) reaches the decision through an exercise of reason. *Jane Doe,* 145 Idaho at 651, 182 P.3d at 708 (citation omitted). "When awarding attorney's fees, a district court must consider the applicable factors[4] set forth in I.R.C.P. 54(e)(3) and may consider any other factor that the court deems appropriate." *Lee v. Nickerson,* 146 Idaho 5, 10–11, 189 P.3d 467, 472–73 (2008) (*citing Parsons v. Mut. of Enumclaw Ins. Co.,* 143 Idaho 743, 747, 152 P.3d 614, 618 (2007) (*quoting Hines v. Hines,* 129 Idaho 847, 855, 934 P.2d 20, 28 (1997))). Though it is not necessary for the court to address all of the I.R.C.P. 54(e)(3) factors in writing, the record must clearly indicate the court consid-

---

4. The factors include the time and labor required, the novelty and difficulty of the issues, the skill required and experience of the attorney, the prevailing charges for similar work, whether the fee is fixed or contingent, time limitations imposed by the client, the amount involved and the results obtained, the undesirability of the case, nature of the relationship with the client, awards in similar cases, and legal research costs. *See* I.R.C.P. 54(e)(3).

ered all of the factors. *Id.* However, the bottom line in an award of attorney's fees is reasonableness. *See Lettunich,* 141 Idaho at 435, 111 P.3d at 121 (finding the attorney's fees award was unreasonably excessive where the district court did not consider the I.R.C.P. 54(e)(3) factors under a standard of reasonableness).

In this case, the district court properly recognized the awarding of attorney's fees as an act of discretion and acted within the outer bounds of such discretion by considering the I.R.C.P. 54(e)(3) factors, but the court did not reach its decision through an exercise of reason. The district court judge stated:

> On the attorney's fees, I could put the attorneys under oath and have them examined and cross-examined and try to figure out how much time was spent on every little thing and what claim and counter-claim it related to and go for all day trying to figure that out. But I did sit through the trial. I did practice law for 25 years doing litigation. I've sat on many, many, many court trials; many, many jury trials as a judge; and I know what attorneys charge in this locality. I know what is excessive work [sic] and what is reasonable work. I know what needs to be done. So I think having to go through the jury trial, which would have been avoided had the counterclaim been dropped, getting ready for that and doing that is about a $10,000 project. So I'm going to award $10,000 under 12–120, Part 3, to Respondent, which I think is reasonable. And I've reviewed all of the subparts to Rule 54(e) in calculating that amount. I've spent hours and hours reading this over, but I don't want to bore you with reciting everything the Supreme Court may need to know. But I have given it a lot of thought. So—and obviously, this is a commercial transaction, so once you find that and find a prevailing party somewhat, even though there's mixed relief, there is some amount of attorney's fees that have to be awarded under Rule 12–120, Part 3.

▇ It is unclear why the district court determined that the attorney's fees submitted by Respondent were excessive, other than the judge's vague statement that he knows what is excessive and what is reasonable based on his litigation experience. In determining the case to be "about a $10,000 project," the district court seems to pull the award of attorney's fees out of thin air. Basing attorney's fees on pure conjecture is inappropriate. It appears that the district court underestimated the work required of Respondent's attorney, but without more this Court does not have the information necessary to determine what would be a reasonable award of attorney's fees. Therefore, we remand on the issue of attorney's fees with instructions to the district court to make a finding as to why the requested attorney's fees were excessive.

**F. Respondent is entitled to attorney's fees on appeal.**

Respondent requests an award of attorney's fees on appeal pursuant to I.C. §§ 12–120(3) and 12–121. The standard for awarding attorney's fees under I.C. § 12–120(3) is stated above. This action is for a commercial transaction and Respondent is the prevailing party on appeal, thus we award Respondent attorney's fees on appeal under I.C. § 12–120(3).

**IV. CONCLUSION**

We remand to the district court for findings on attorney's fees below for respondent and affirm the district court on all other issues. Attorney's fees and costs on appeal are awarded to respondent.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON, concur.