IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38683

KYLE ATHAY,               )
                          )
   Plaintiff-Respondent,  )
                          )
v.                        )
                          )       Boise, August 2012 Term
RICH COUNTY, UTAH,        )
                          )       2012 Opinion No. 139
   Defendant-Appellant,   )
                          )       Filed:  November 16, 2012
and                       )
                          )       Stephen W. Kenyon, Clerk
DALE M. STACY; CHAD L. LUDWIG; )
GREGG ATHAY; BRENT R. BUNN; BEAR )
LAKE COUNTY, IDAHO,       )
                          )
   Defendants.            )
                          )

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bear Lake County.  Hon. Mitchell W. Brown, District Judge.

District court rulings following jury trial, <u>affirmed.</u>

Pike, Herndon, Stosich & Johnston, Salt Lake City, UT for appellant.  Peter Stirba argued.

Craig R. Jorgensen, Pocatello, argued for respondent.

---

BURDICK, Chief Justice

This case comes before this Court on an appeal from several district court rulings in an ongoing dispute between Kyle Athay (Athay) and Rich County, Utah (Rich County).  Athay was injured in a motor vehicle collision with Daryl Ervin (Ervin), who was fleeing police pursuit. Subsequently, Athay filed a civil suit against the pursuing law enforcement officers from Bear Lake County, Idaho and Rich County.  This Court previously heard argument on this case in *Athay v. Stacey*, 142 Idaho 360, 128 P.3d 897 (2005) ("*Athay I*"), and in *Athay v. Stacey*, 146 Idaho 407, 196 P.3d 325 (2008) ("*Athay II*").

1

After *Athay II*, a jury trial commenced with Rich County as the sole remaining defendant. The jury returned a special verdict for Athay and awarded him $2,720,126.00 in economic damages and $1,000,000 in non-economic damages. The jury found that Ervin was 70% responsible for Athay's injuries, and that Rich County was responsible for the remaining 30%.

On appeal, Rich County argues that the district court made multiple errors: that the district court abused its discretion when it declined to disqualify the presiding judge for the limited purpose of deciding Rich County's First Motion for a New Trial; that the district court erred by denying Rich County's first and second motions for new trial; and that the district court erred when it denied Rich County's Motion for Judgment Notwithstanding the Verdict. We affirm the decisions of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 1999, Athay was injured when his vehicle was struck by Ervin, as Ervin fled police pursuit. Rich County Sheriff Dale Stacey (Sheriff Stacey) had commenced pursuit of Ervin in northern Utah and followed him for roughly sixty miles through Wyoming and into Idaho. Once the pursuit entered Bear Lake County, Idaho, it was joined by Bear Lake County Deputies Gregg Athay and Chad Ludwig who followed behind Sheriff Stacey. Athay had pulled off the highway and stopped to help at the scene of a deer-vehicle collision on the highway about three miles north of Montpelier. As he was pulling back onto the highway, the Mustang crashed into his car. *Athay II*, 146 Idaho at 410, 196 P.3d at 328.

On April 19, 2002, Athay filed this lawsuit against Sheriff Stacey and Rich County, against Bear Lake County Deputies Gregg Athay and Chad Ludwig, and against Bear Lake County and its Sheriff, Brent Bunn. The district court granted the Defendants' motions for summary judgment, and Athay appealed. This Court affirmed the dismissal as to Sheriff Brent Bunn and Deputy Chad Ludwig, vacated the summary judgments as to the remaining Defendants, and remanded the case for further proceedings. *Athay I,* 142 Idaho 360, 128 P.3d 897.

The issue again reached this Court in 2008 after the district court granted summary judgment to the defendants. *Athay II*, 146 Idaho 407, 196 P.3d 325.

> The district court held that the complaint must be dismissed as to all defendants for various reasons including that the plaintiff failed to comply with the notice of tort claim requirements of the Idaho Tort Claims Act, the plaintiff failed to post a

2

bond as required by Idaho Code § 6–610, and the conduct of the defendants did not rise to the level of reckless disregard.

*Id.* at 410, 196 P.3d at 328. This Court affirmed the decision of the district court except as to Rich County. As to Rich County, this Court held that there were genuine issues of material fact in regards to whether Sheriff Stacey acted with reckless disregard. *Id.* at 422, 196 P.3d at 340.

The jury trial began on July 13, 2010, with Rich County as the sole remaining defendant. After nine days of testimony and argument, the jury returned a special verdict for Athay and awarded him $2,720,126.00 in economic damages and $1,000,000 in non-economic damages. In the verdict, the jury found that Sheriff Stacey, as an agent of Rich County, was 30% at fault, and that Ervin was 70% at fault.

Judge Brown, the presiding district judge, scheduled a status conference on September 16, 2010, to discuss post-trial issues. During the telephonic conference, Judge Brown disclosed that a member of the court staff engaged in communications with Athay. Judge Brown stated that his courtroom clerk, Brandy Peck (Peck), had multiple conversations with Athay in the form of conversations in the hallway and text messaging. Peck assured Judge Brown that no substantive information was exchanged in these communications.

On October 8, 2010, the district court entered a Judgment against Rich County in the amount of $1,126,843.01 in accordance with the jury verdict.

On October 1, 2010, Rich County filed a motion for new trial ("First Motion for New Trial") with a supporting memorandum. According to Rich County, the motion was based solely upon disclosed information regarding the communications between Athay and Peck. However, this motion was not immediately resolved because Rich County filed a motion for limited disqualification of Judge Brown on October 22, 2010.

In the motion for limited disqualification, Rich County alleged that Judge Brown had an interest in the disposition of the First Motion for New Trial and could not render an impartial decision. On November 4, 2010, the district court heard argument on and denied the motion for limited disqualification.

Rich County also filed a second Motion for New Trial ("Second Motion for New Trial") and a motion for judgment notwithstanding the verdict (JNOV) concurrent with the motion for limited disqualification. The court heard arguments and evidence on these motions on November 18, 2010.

3

The district court denied Rich County's First Motion for New Trial in a memorandum decision on February 1, 2011. In the decision, the district court ruled that the motion was procedurally defective under I.R.C.P. 59(a)(1), as it lacked an accompanying affidavit. In a separate memorandum decision issued on February 14, 2011, the district court denied Rich County's Second Motion for New Trial and Motion for JNOV. On the Second Motion for New Trial, the district court held that the motion was "fatally flawed because it does not set forth with particularity the factual basis for its claim for new trial pursuant to the requirements of I.R.C.P. 59(a)(7)." On the motion for JNOV, the district court found that there was substantial evidence in the record to support the jury's verdict that Sheriff Stacey's conduct rose to the level of reckless disregard as defined by this Court.

Rich County timely filed a notice of appeal with this Court, alleging that the district court erred in denying the motion for limited disqualification, the motion for JNOV, and the two motions for new trial.

## II. ISSUES ON APPEAL

1. Whether the district court judge erred by denying Rich County's Motion for Limited Disqualification of Judge and by declining to voluntarily disqualify himself from deciding Rich County's Motion for a New Trial.

2. Whether the district court erred in denying Rich County's First Motion for New Trial.

3. Whether the district court erred when it struck Rich County's Second Motion for New Trial as untimely.

4. Whether the district court erred in denying Rich County's Motion for Judgment Notwithstanding the Verdict.

5. Whether Athay is entitled to attorney fees and costs on appeal.

## III. ANALYSIS

**A. The district judge did not err by denying Rich County's Motion for Limited Disqualification of Judge and by declining to voluntarily disqualify himself from deciding Rich County's Motion for a New Trial.**

Rich County filed a motion for limited disqualification on October 22, 2010, and argument on the motion was heard on November 4, 2010. The motion was filed pursuant to I.R.C.P. 40(d)(2) and alleged that Judge Brown had an interest in the disposition of the First Motion for New Trial and could not render an impartial decision. After acknowledging that this matter is one of discretion, the district court stated its belief in its ability to remain impartial.

4

On appeal, Rich County argues that Judge Brown should be disqualified from presiding over the First Motion for a New Trial based on his involvement in the facts which form the basis for the motion. Additionally, Rich County alleges that Judge Brown has a biased interest in the resolution of the motion.

1. Standard of Review

"Whether a judge's involvement in a case reaches a point where disqualification from further participation in a defendant's case becomes necessary is left to the sound discretion of the judge himself." *Sivak v. State*, 112 Idaho 197, 206, 731 P.2d 192, 201 (1986).

> To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason.

*Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008).

2. Whether the district judge erred by denying Rich County's Motion for Limited Disqualification of Judge and by declining to voluntarily disqualify himself from deciding Rich County's Motion for a New Trial.

On appeal, Rich County argues that in order for Judge Brown to rule on the merits of the First Motion for New Trial, the Judge would have to decide whether his staff member's testimony was to be believed and whether the conduct unfairly impacted the trial proceedings:

> In other words, to grant Rich County's Motion, Judge Brown would have to admit that his own actions directly or indirectly necessitated a new trial. There is no doubt that despite his assertions to the contrary, Judge Brown could not possibly make a fair determination on this issue and should have granted Rich County's Motion for Disqualification.

In response, Athay argues that Rich County failed to demonstrate that Judge Brown had any bias which prevented him from acting properly on the First Motion for New Trial. Since there was no showing of bias, Athay argues that Judge Brown properly exercised his discretion in deciding not to disqualify himself.

This Court previously held in *Bach v. Bagley* that "the standard for recusal of a judge, based simply on information that he has learned in the course of judicial proceedings, is extremely high." 148 Idaho 784, 792, 229 P.3d 1146, 1154 (2010). The decision in *Bach* adopted a standard from the United States Supreme Court opinion in *Liteky v. United States*, 510 U.S. 540 (1994). In *Liteky*, the Court noted that:

5

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep seated favoritism or antagonism that would make fair judgment impossible.

*Id.*, at 555–56. In *Bach*, the moving party provided no specific evidence of bias or prejudice by the trial judge and failed to meet the *Liteky* standard. 148 Idaho at 792, 229 P.3d at 1154. "[U]nless there is a demonstration of 'pervasive bias' derived either from an extrajudicial source or facts and events occurring at trial, there is no basis for judicial recusal." *Id.* at 791, 229 P.3d at 1153.

#### a. Peck's communication with Athay

In this case, Judge Brown held a telephonic conference with the parties after he learned of the communication between Peck and Athay. In the conference, Judge Brown informed the parties of the nature of the communication:

> It came to my attention during the course of trial that there was an occasion where my in-the-courtroom-clerk, Brandy, had some conversations out in the hall during the course of the trial with the plaintiff Kyle Athay. I was made aware of this and I told her at the time she was an extension of the Court and that those types of communications were not appropriate and should not continue. . . .

> I inquired of her at that time what the nature of the conversations were and she indicated that they were just, you know, general in nature and in no way involved the nature of the case or any of the proceedings or those kind of issues. . . . I instructed her that those communications were to be discontinued.

> After the trial I learned that those communications have continued in the way of text messaging and I have again had discussions with her regarding those communications and the inappropriate nature of those communications. I have again been assured by her that there were no substantive issues discussed with respect to the case but again they were more of a general nature and getting to know one another, background information and those kind of issues.

The judge then indicated that he felt an obligation to disclose this information to the parties:

> I did feel once I had learned that the conversations did not cease after my one discussion with her about it during the course of the trial, I felt an obligation to disclose that to both parties and so I have satisfied myself that despite the fact that the conversations were wholly inappropriate and should not have occurred, I have satisfied myself that nothing regarding the case or any of the privileged or confidential information that went on in my chambers was a subject of those conversations.

### b. *The motion for limited disqualification*

After the conference, Rich County filed its First Motion for New Trial followed by the motion for limited disqualification of Judge Brown. In an accompanying memorandum, Rich County argued that disqualification was warranted under I.R.C.P. Rule 40(d)(2)(A) and the Idaho Code of Judicial Conduct, Canon 3(E). Idaho Rule of Civil Procedure 40(d)(2)(A) states in pertinent part that:

> Any party to an action may disqualify a judge or magistrate for cause from presiding in any action upon any of the following grounds:
>
> 1. That the judge or magistrate is a party, or is interested, in the action or proceeding.
> . . .
> 4. That the judge or magistrate is biased or prejudiced for or against any party or the case in the action.

In the Idaho Code of Judicial Conduct, Canon 3(E)(1)(a) states that:

> A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or has personal knowledge of disputed evidentiary facts that might reasonably affect the judge's impartiality in the proceedings.

On the application of the Idaho Code of Judicial Conduct to staff, Canon 3(C)(2) states that:

> A judge shall require staff, court officials and others subject to the judge's discretion and control to observe the standards diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

### c. *Hearing on the motion for limited disqualification*

On November 4, 2010, a hearing was held on the motion for limited disqualification. At the hearing, Rich County argued that Judge Brown had an irreconcilable appearance of bias or interest in hearing evidence where his staff member's credibility and conduct is to be decided. The Judge began his analysis with a discussion of the relevant issues:

> But as I see this, there are two distinct issues as I am analyzing this case. And one is what my ethical and moral obligations are pursuant to the judicial canons and how to deal with this issue based upon a clear breach of those canons by one of my staff. . . . That was improper, inappropriate and it needs to be dealt with. And I understand that and I have certain responsibilities that I feel flow from that as far as educating, teaching and disciplining my staff associated with those issues.
>
> And then the other prong of this analysis which is what I think we are here about today is, how does that affect the proceeding of this trial and the now request for a Motion for a New Trial. And as I evaluate that, I am not certain that

my role as a judge in fulfilling any judicial canon responsibilities and educating, addressing and disciplining my staff for breaches of those necessarily come into play. It is the communication and what effect, if any, that had on the Judge and/or the jury that comes into play with respect to the Motion for a New Trial.

Judge Brown then stated confidence in his ability to render an impartial decision on the motion:

The Court does have the ability to adequately assess and determine whether or not it . . . can continue to act in a fair and impartial manner in addressing these issues, despite the fact that it involves one of my subordinates, one of my employees, one of my staff who I do have a relationship with . . . .

With this rationale, the district court denied the motion for limited disqualification, and signaled its intent to proceed with hearings on the First Motion for New Trial.

### d. Applicable legal standards

When a member of the court staff engages in unauthorized communication with one of the parties there is a clear problem with appearances and perceptions. Here however, there is nothing in the existing case law that would impute the actions of a member of the court staff to the judge. Idaho Code of Judicial Conduct Canon 3(B)(7) states that "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . ." Exceptions to Canon 3(B)(7) include circumstances that require ex parte communication for scheduling or administrative purposes. Canon 3(B)(7)(a). The Canon specifically references communications made either by or to the judge, including communication permitted by the judge. There is no language in the Canon that would extend this prohibition to include all communication by a court official to one of the parties. On the contrary, some communication from court staff to the parties is essential for scheduling and other gatekeeping functions of the court. To be considered ex parte, there must be some transmission of information between the judge and the party—or the jury—through the court staff. *See*, *e.g.*, *Reichmann v. State*, 966 So.2d 298, 318 (Fla. 2007) ("Nevertheless, we again caution that trial judges should be careful to avoid ex parte contacts of any kind, even through the use of judicial assistants, that could be perceived to have been made without the knowledge of all parties.").

Appellant's argument seems to be that based upon the Idaho Code of Judicial Conduct Canon 3(C)(2), a staff member's conduct must be equated to the court's conduct. Canon 3(C)(2) orders a judge to "require staff . . . to refrain from manifesting bias or prejudice." The judge's responsibility then is to make sure the staff observes the same standards of diligence as a judge

8

in not showing bias or prejudice. But it does not impute a staff member's conduct to the judge. Additionally, in the first instance Judge Brown complied with Canon 3(C)(2) in admonishing the staff member to cease contact and educating her about her inappropriate behavior. Then, upon finding another violation, Judge Brown exposed her conduct to counsel for further independent investigation. He has done as the Canons instruct.

Next, Appellant argues that the judge could not decide the credibility of his staff member without an appearance of bias. However, Judge Brown's acknowledgment of her misbehavior shows he had no hesitancy in addressing his ethical and legal duty to tell counsel so they could explore the possible impact that her conduct had on the fairness of the trial. Judge Brown's remarks show he found her conduct to be reprehensible but that he also knew his responsibilities between his ethical duty and his legal duty under Canon 3(C)(2) pursuant to I.R.C.P. 40(d)(2)(A)

Additionally, there is no evidence that the staff member manifested bias or prejudice or that any confidential information was passed between the staff member and Athay. This, coupled with Judge Brown's forthcoming disclosure, would indicate that the high standard from *Bach* has not been met by Rich County. Judge Brown's disclosure in the September 16, 2010 telephonic hearing also demonstrated his willingness to question the conduct of his staff member.

The clerk's conduct cannot be defended at any level, but such conduct does not necessarily taint the judge or the proceeding. Unless the court official is relaying information between the judge and the party, any communication between the clerk and Athay was not ex parte under the Judicial Canons. Therefore, in the absence of any evidence of bias or that ex parte communications reached and influenced the jury, we hold that the district judge did not err by denying Rich County's motion for limited disqualification of the judge.

**B. The district court did not err in denying Rich County's First Motion for a New Trial.**

On October 1, 2010, Rich County filed its First Motion for New Trial and an accompanying memorandum. In the memorandum, Rich County argued that a new trial is warranted under I.R.C.P. 59, or that in the alternative all ex parte communication should be produced. Arguments were heard and evidence was presented on November 18, 2010. In its February 1, 2011 memorandum decision, the district court denied Rich County's First Motion for New Trial as procedurally defective under I.R.C.P. 59(a)(1).

On appeal, Rich County makes two distinct arguments on whether the district court erred in denying the First Motion for a New Trial. First, Rich County argues that the motion was not

9

procedurally defective under I.R.C.P. 59(a).  Second, Rich County argues that the motion should have been granted on the merits.

1. Standard of Review.

"The interpretation of the Idaho Rules of Civil Procedure is a matter of law over which this Court exercises free review." *Harrison v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 145 Idaho 179, 181, 177 P.3d 393, 395 (2008).  The Idaho Rules of Civil Procedure "shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(a).

2. The district court did not err by holding that Rich County's First Motion for a New Trial was procedurally defective.

In its February 1, 2011 memorandum decision, the district court denied Rich County's First Motion for New Trial, as procedurally defective under I.R.C.P. 59(a)(7).   Idaho Rule of Civil Procedure 59(a)(1) allows a new trial to be granted if "[i]rregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." However, a motion for a new trial under I.R.C.P. 59(a)(1) "must be accompanied by an affidavit stating in detail the facts relied upon in support of such motion for a new trial." I.R.C.P. 59(a)(7).

In its decision, the district court held that Rich County's motion was "procedurally defective for its failure to support the motion with an affidavit."  In so holding, the district court acknowledged that Rich County filed an affidavit of R. Blake Hamilton in support of the motion, but found the affidavit defective as it was not filed contemporaneously with the motion as required under I.R.C.P. 59(a)(7).

On appeal, Rich County argues that the district court abused its discretion when it denied Rich County's First Motion for New Trial based on the failure to contemporaneously file an affidavit.  Rich County argues that the district court "was fully aware that the only facts forming the basis of Rich County's First Motion were those the Court stated on the record, on its own volition, on September 16, 2011 . . . ."  On that point, Rich County argues that I.R.C.P. 59(a)(7) only requires the contemporaneous submission of an affidavit if the grounds for new trial require some new information that the court would not likely be aware of.  Additionally, Rich County argues that I.R.C.P. 1(a) states that the civil "rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding."

10

However, previous holdings of this Court make it clear that the requirement for an accompanying affidavit in I.R.C.P. 59(a)(7) is mandatory. *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 247, 245 P.3d 992, 999 (2010); *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341, 347 (2008). In *Johannsen*, this Court held that the Appellant "procedurally defaulted on this ground by failing to file an affidavit to accompany his motion for a new trial." 146 Idaho at 429, 196 P.3d at 347. Here, the record on appeal shows that the First Motion for New Trial was filed without an accompanying affidavit. Therefore, we hold that the district court interpreted the rule properly when it found Rich County's First Motion for New Trial to be procedurally defective.

**C. The district court did not err when it struck Rich County's Second Motion for New Trial as untimely.**

On October 22, 2010, Rich County filed its second Motion for New Trial and on November 5, 2010, filed a memorandum in support of the motion. After argument on the motion was heard, the district court issued a memorandum decision and order on February 14, 2011. In the decision, the district court held that Rich County's Second Motion for New Trial was, although timely under I.R.C.P. 59(b), "fatally flawed because it does not set forth with particularity the factual basis for its claim for new trial pursuant to the requirements of I.R.C.P. 59(a)(7)." In reliance upon this Court's opinion in *Kuhn*, 150 Idaho at 246, 245 P.3d at 998, the district court found that the memorandum in support of the Second Motion for New Trial was not filed within the required fourteen days post entry of judgment.

1. Standard of Review.

Like in Part III.B, "[t]he interpretation of the Idaho Rules of Civil Procedure is a matter of law over which this Court exercises free review." *Harrison*, 145 Idaho at 181, 177 P.3d at 395. The Idaho Rules of Civil Procedure "shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(a).

2. The district court did not err when it struck Rich County's Second Motion for New Trial as untimely.

Rich County argues on appeal that I.R.C.P. 59 does not set forth a specific time for filing supporting memoranda of facts and law. In the absence of specific language, Rich County argues that it relied upon I.R.C.P. 7(b)(3), which states in part that "[a]ny brief submitted in support of a motion shall be filed with the court, and served so that it is received by the parties, at least fourteen (14) days prior to the hearing." I.R.C.P. 7(b)(3)(E). Additionally, Rich County

11

argues that the district court erred by relying upon *Kuhn* in two ways. First, that *Kuhn* did not overrule prior precedent in *Nations v. Bonner Bldg. Supply*, 113 Idaho 568, 569, 746 P.2d 1027, 1028 (Ct. App. 1987). And second, that the district court improperly applied the holding in *Kuhn* retroactively.

Idaho Rule of Civil Procedure 59(b) states that "[a] motion for a new trial shall be served not later than fourteen (14) days after the entry of the judgment." Additionally, any motion based on subdivisions 6 or 7 of I.R.C.P. 59(a) "must set forth the factual grounds therefor with particularity." I.R.C.P. 59(a)(7). In *Kuhn*, this Court held that the fourteen-day time limit applies to the requirement for particularity.

> Appellants' motion for a new trial fails to provide any factual grounds, and only suggests that the motion '*will be* supported by a Memorandum in Support of Alternative Motions that *will be* filed with the Court.' The judgment in this matter was filed on February 5, 2003. Appellants' new trial motion, which was strictly generic in nature, was filed on February 14. It was not until May 5, 2003, that appellants filed their memorandum specifying the grounds for the motion, together with their supporting affidavits. Because there was no factual support filed in support of these motions within the fourteen-day period prescribed by the rule, the district court properly denied the motion.

*Kuhn*, 150 Idaho at 248, 245 P.3d at 1000 (emphasis in original). As Rich County highlights, *Kuhn* was decided on December 23, 2010, after arguments were heard on the second motion for new trial. "The usual rule is that decisions of this Court apply retroactively to all past and pending cases." *BHA Investments, Inc. v. City of Boise*, 141 Idaho 168, 173, 108 P.3d 315, 320 (2004) (citing *State v. Tipton,* 99 Idaho 670, 672, 587 P.2d 305, 307 (1978)). Although this Court has discretion to limit the retroactive application of a particular case, *Kuhn* does not have any such limitation. *See id.*; *Kuhn*, 150 Idaho at 248, 245 P.3d at 1000. Additionally, this element of *Kuhn* is not a pronouncement of new law. It appears to be a restatement of the procedural rule in keeping with previous opinions, including *Johannsen*. 146 Idaho at 430, 196 P.3d at 348. "Any motion for a new trial based on insufficiency of the evidence must 'set forth the factual grounds therefor with particularity.'" *Id*. (quoting I.R.C.P. 59(a)(7)). It is clear from the language of the rule, and this Court's interpretations pre-*Kuhn*, that the requirement for contemporaneous explanation is at least implied. Therefore, the memorandum filed on November 5, 2010 was untimely as it pertains to the requirements of I.R.C.P. 59(a)(7).

Since the memorandum is untimely, this Court is left with the language found in the motion itself. Rich County's Second Motion for New Trial in its entirety reads:

12

Defendant Rich County, Utah, by and through undersigned counsel, pursuant to Idaho R. Civ. Proc. 50 and 59, hereby files this Motion for New Trial, or Alternatively, for Judgment Notwithstanding the Verdict. A Memorandum in Support of this Motion will be filed in accordance with Rule 7 of the Idaho Rules of Civil Procedure.

The motion does not express with any particularity the factual basis for the claim for new trial, nor does it specify the subsection of I.R.C.P. 59(a) used for the appeal. We hold that the district court properly interpreted the Idaho Rules of Civil Procedure when it denied Rich County's Second Motion for New Trial as procedurally non-compliant with I.R.C.P. 59(a)(7).

**D. The district court did not err in denying Rich County's Motion for Judgment Notwithstanding the Verdict.**

Rich County argues that there was insufficient evidence produced at trial for the jury to find reckless disregard by Sheriff Stacey, and that absent this evidence the district judge should grant the motion for judgment notwithstanding the verdict. In response, Athay argues that the district court recognized numerous facts that would support the verdict and the finding that Sheriff Stacey acted with reckless disregard.

1. Standard of Review

The standard of review of a grant or denial of a motion for JNOV is the same as that of the trial court when ruling on the motion. A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury. In reviewing a grant or denial of a motion for JNOV the court may not reweigh evidence, consider witness credibility, or compare its factual findings with that of the jury. The court reviews the facts as if the moving party had admitted any adverse facts, drawing reasonable inferences in favor of the non-moving party.

*Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho 313, 324, 179 P.3d 276, 287 (2008) (quoting *Gillingham Const., Inc. v. Newby–Wiggins Const., Inc.,* 142 Idaho 15, 21, 121 P.3d 946, 951 (2005)).

2. The district court did not err in denying Rich County's Motion for Judgment Notwithstanding the Verdict.

In its memorandum decision on Rich County's motion, the district court found substantial evidence in the record to support the jury's verdict that Sheriff Stacey's conduct rose to the level of reckless disregard. Reckless disregard was defined by this Court in *Athay II*.

To constitute reckless disregard, the actor's conduct must not only create an unreasonable risk of bodily harm, but, as we held in *Athay I,* the actor must actually perceive the high degree of probability that harm will result and continue in his course of conduct. Actual knowledge of the high degree of probability that

harm will result does not require knowledge of the actual person or persons at risk, or the exact manner in which they would be harmed. It only requires knowledge of the high degree of probability of the kind of harm that the injured party suffered.

*Athay II*, 146 Idaho at 414, 196 P.3d at 332 (internal citations omitted). As this Court stated in *Athay II*, when another state is a defendant in a tort action brought in an Idaho court, the Idaho Tort Claims Act will be applied "in the same manner as our State would be treated." 146 Idaho at 421, 196 P.3d at 339. Under this doctrine, the reckless disregard standard applied to Sheriff Stacey's conduct.

The district court noted fifteen facts that the jury might have relied upon to reach the conclusion that Sheriff Stacey acted with reckless disregard:

(1) Stacey initiated a stop of Daryl Ervin (Ervin) near Sage Creek Junction in Rich County, Utah. The purpose of the intended stop was due to erratic driving behavior and suspicion of DUI;

(2) However, Ervin did not stop; instead he fled and high speed pursuit ensued;

(3) This pursuit, which began in Utah, continued through Wyoming and into Idaho;

(4) The testimony at trial established that it was between 63 and 66 miles from the scene of the attempted stop to the scene of the Athay/Ervin accident;

(5) This pursuit involved law enforcement personnel from Rich County, Utah, Lincoln County, Wyoming and Bear Lake County, Idaho;

(6) The pursuit involved speeds in excess of 96 miles per hour;

(7) The pursuit went through two population centers, Cokeville, Wyoming and Montpelier, Idaho;

(8) The evidence established that this high speed pursuit was ongoing while there was other traffic on the road. In fact it was established that the utility of the spike strips was impaired because of other vehicles in close proximity to the strips when Ervin came through that area;

(9) The testimony established that the deployment of spike strips was not successful in stopping or even slowing the Ervin vehicle;

(10) For a period of approximately eleven (11) miles the Ervin vehicle was driving on three (3) tires and the remnants of a fourth which had been destroyed during the spiking incident;

(11) Despite the destruction of one of the tires on the Ervin vehicle, the high speed pursuit continued at speeds in excess of 96 miles per hour;

(12) There was testimony that Ervin went through Montpelier, Idaho at high rates of speed;

14

(13) There was testimony that at times, between the point where the spike strips were deployed and the accident occurred, Ervin was operating his vehicle without headlights being activated;

(14) There was testimony concerning a collision between the Ervin vehicle and a truck being pulled into the Ranch Hand and testimony concerning Ervin's vehicle starting to fishtail as it accelerated after leaving Montpelier proper;

(15) Finally, Sheriff Stacey testified that he knew that there were risks to the travelling public involved in this high speed pursuit.

Athay goes even further in his Respondent's Brief, highlighting numerous exchanges with Sheriff Stacey during the trial regarding the pursuit and Stacey's role in that pursuit. For example, after spike strips were deployed causing tire damage to Ervin's mustang:

Q. And did you decide at that time to continue the chase?

A. I decided that I would continue to follow him and the other officers by that time were also following.

. . .

Q. And so we have gone over the spike strips, he slowed to 50, you are a hundred yards behind but he speeds up to 90?

A. Yes.

Q. And you are following him at 90?

A. Yes.

Q. How far behind were you as you went through Montpelier?

A. Maybe half a mile.

. . .

Q. And the Mustang sped up as it left town; is that correct?

A. I think so, yes.

Q. And you decided to continue the chase?

A. I decided that I would continue to follow the Mustang.

Later in his testimony, Sheriff Stacey indicated that, like driving in general, police chases end "either because we step on the brakes and we stop voluntarily, our car breaks down or we get into an accident."

These examples demonstrate there was evidence presented at trial to provide sufficient basis for the jury's conclusion that Sheriff Stacey acted with reckless disregard as defined by this Court. Therefore, we find that the district court did not err in denying Rich County's Motion for Judgment Notwithstanding the Verdict.

15

**E. Athay is entitled to attorney fees on appeal.**

Athay argues that he is entitled to costs and attorney fees on appeal pursuant to I.C. § 12-121. In reply, Rich County argues that Athay failed to submit any argument to support the request for attorney fees aside from naming the statute under which attorney fees may be awarded.

The mere citation to a code provision, without explaining how the cited code section provides for an award in the case or providing argument of how the section applies to the circumstances in the case, is insufficient for an award of attorney fees on appeal. *Clair v. Clair*, 153 Idaho 278, __, 281 P.3d 115, 128 (2012) (citing *Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010)).

Athay's entire request for attorney fees on appeal reads as follows:

> Respondent requests an award of attorney's fees pursuant to Idaho Code § 12-121 and I.A.R. 41. Idaho Code § 12-121 allows an award of attorney's fees in a civil action if the appeal merely invites the court to second guess the findings of the lower court. *Crowley v. Critchfield*, 145 Idaho 509, 514, 181 P.3d 435, 440 (2007).
>
> Attorney's fees may also be awarded under section 12-121 if the appeal is brought or defended frivolously, unreasonably, or without foundation. *Id*.

This particular request for fees would be improved by additional explanation, but it is valid since it cites to authority and contains argument.

Idaho Code section 12-121 states that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any staute which otherwise provides for the award of attorney's fees." "An award of attorney's fees under I.C. § 12–121 is proper only where the Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Chavez v. Barrus*, 146 Idaho 212, 225, 192 P.3d 1036, 1049 (2008) (internal quotations omitted).

For Athay to receive attorney fees on appeal, all four issues must be pursued frivolously or without foundation. "If there is a legitimate, triable issue of fact or a legitimate issue of law, attorney fees may not be awarded under this statute even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or without foundation." *Thomas v. Madsen*, 142 Idaho 635, 639, 132 P.3d 392, 396 (2006). However, analyzing each issue individually, it is clear that the appeal was pursued without foundation. On the disqualification

16

motion, the communication was not *ex parte*, and there was no evidence at all of actual bias or perceived bias. On the two motions for new trial, there were clear statements of the rules to be followed with interpretations backed by case law. On the JNOV, the issue of reckless disregard was supported by admitted, substantial evidence that the jury or court could rely upon. Therefore, we award attorney fees to Athay on appeal.

## IV. CONCLUSION

We hold that the district court did not err when it declined to disqualify the judge for the limited purpose of hearing Rich County's First Motion for a New Trial. We also hold that Rich County's First Motion for a New Trial was defective because it lacked an accompanying affidavit, and that Rich County's Second Motion for a New Trial was defective because it did not specify the factual grounds for the motion with particularity. Further, we hold that the district court did not err by denying Rich County's motion for judgment notwithstanding the verdict, since there was adequate evidence presented to the jury to support a finding of reckless disregard by Sheriff Stacey.

Attorney fees and costs are awarded to Athay on appeal.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**